1  GREGORY S. WALSTON, State Bar No. 196776
   WALSTON CROSS, Attorneys
2  A Professional Law Corporation
   735 Montgomery Street, Suite 250
3  San Francisco, California 94111
   Telephone: (415) 956-9200
4  Facsimile: (415) 956-9205
   Email: gwalston@walstonlaw.com
5
   ATTORNEYS FOR PLAINTIFF
6
7              UNITED STATES DISTRICT COURT
8              NORTHERN DISTRICT OF CALIFORNIA

9  RICHARD A DUSTE,              | Case No. CV-08-3980
10            Plaintiff,          | **PLAINIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
11     v.                         |
12 CHEVRON PRODUCTS COMPANY, et al, |
13            Defendants.         | Date: November 5, 2009
                                  | Time: 10:00 a.m.
14                                | Courtroom: B



**TABLE OF CONTENTS**

Introduction………………………………………………………………1

Statement of Facts…………………………………………………………..2

Statement of the Issues…………………………………………………….. 2

    1.  Slander……………………………………………………………2

    2.  Negligence / Negligent Interference with Contract / Negligent Infliction of Emotional Distress …………………………………..3

    3.  Intentional Infliction of Emotional Distress…………………… 3

Standard……………………………………………………………………… 3

Argument……………………………………………………………………... 4

I.    Plaintiff's Claims Are Not Preempted By Workers' Compensation Laws…………………………………………………………………….. 4

II.    Defendants' Motion Fails to Meet Its Burden With Respect to Plaintiff's Slander Claims……………………………………………..6

    A.  Defendants' Statement Were Slanderous Per Se Under Cal. Civil Code Section 46………………………6

    B.  The Slanderous Statements Were Not Privileged……… 7

    C.  Chevron is Vicariously Liable for its Employees' Slanderous Statements…………………………………… 8

        1.  Tim Black's False Statements Made During The Investigation Were Within a Causal Nexus With His Employment With Chevron………………9

        2.  Chevron is Vicariously Liable for its Employees' Statements to Industry Clients……………………... 10

III.    Defendants' Motion Fails to Meet Its Burden With Respect to Plaintiff's Negligence Claims……………………………………… 11

IV.    Defendants' Motion Fails to Meet Its Burden With Respect to Plaintiff's Claims for Intentional Infliction of Emotional Distress... 12

Conclusion……………………………………………………………… 14

*Duste v. Chevron Products Company, et al.*

# TABLE OF AUTHORITIES

Reported Cases

*Abelson v. National Union Fire Ins. Co.*, 28 Cal. App. 4th 776 (Cal. 1994)……….13

*Accardi v. Superior Court,* 17 Cal.App.4th 341 (Cal. 1993)…………………………5

*Agarwal v. Johnson,* 25 Cal.3d 932 (1972) …………………………………….. 12-13

*Ann M. v. Pacific Plaza Shopping Center,* 6 Cal.4th 666 (Cal. 1993)……………...11

*Carr v. Wm. C. Crowell Co.* 28 Cal. 2d 652 (Cal. 1946)…………………………...8-10

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986)……………………………………….. 3

*Christensen v. Superior Court,* 54 Cal.3d 868 (Cal. 1991)…………………………12

*Delfino v. Agilent Technologies, Inc.* 145 Cal. App. 4th 790 (Cal. 2006)………….13

*Fretland v. County of Humboldt,* 69 Cal. App. 4th 1478 (1999)…………………...5

*Hiroshima v. Pacific Gas & Elec. Co.* 18 Cal. App. 2d 24 (Cal. 1936) ………….. 9

*John R. v. Oakland Unified School Dist.* 48 Cal. 3d 438 (Cal. 1989)……………... 8

*Ladd v. County of San Mateo,* 12 Cal.4th 913 (Cal 1996)…………………………11

*Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291 (Cal 1994)………. 8-10

*Lundquist v. Reusser*, 7 Cal. 4th 1193 (Cal. 1994)…………………………………. 7

*Mary M. v. City of Los Angeles*, 54 Cal. 3d 202 (Cal. 1991)……………………….8

*McKinney v. Santa Clara*, 110 Cal. App. 3d 787 (Cal. 1980) ……………………...5

*Perez v. Van Groningen & Sons, Inc.* 41 Cal. 3d 962 (Cal. 1986) ………………... 8

*Rodgers v. Kemper Constr. Co.*, 50 Cal. App. 3d 608 (Cal. 1965)…………………9-11

*Schneider v. United Air Lines, Inc.*, 208 Cal. App. 3d 71 (Cal. 1989) …………….5

*Saelzer v. Advanced Group 400*, 25 Cal 4th 763 (Cal. 2001)………………………11

*White v. Ultramar*, 21 Cal.4th 563 (Cal. 1999)…………………………….. 13

Statutes

Fed. Rule Civ. Proc. 56…………………………………………………………….. 4

Cal. Civ. Code § 46………………………………………………………………………6-7

Cal. Civ. Code § 47(c)……………………………………………………………... 7-9

California Civil Jury Instructions, 1700 (West 2009)………………………………7

*Duste v. Chevron Products Company, et al.*

Other Authorities

10A C. Wright, et al., Federal Practice and Procedure 2727 (2d ed. 1983)……….. 4

Black's Law Dictionary (6th ed. 1990)…………………………………………….. 8

California Civil Jury Instruction No. 2204……………………………………… 12

Louis, Federal Summary Judgment Doctrine, 83 Yale L. J. 745 (1974)…………... 4

Rest.2d Torts, § 46, com. d…………………………………………………….. 13

*Duste v. Chevron Products Company, et al.*



# INTRODUCTION

Plaintiff Richard Duste (Mr. Duste) was a territory sales manager with Chevron. He was responsible for, among other things, facilitating and maintaining relations with Chevron's clients. To this end, he was frequently required to entertain executives from oil-consuming companies. And, as a practical matter, entertaining oil-company executives does not always involve trips to fancy tapas restaurants and nice wine bars. In this case, Mr. Duste was fired for accommodating Chevron clients' requests to go to gentlemen's clubs.

Of course, since it was Mr. Duste's job to entertain clients – who by all accounts included hard drinking oil executives who liked gentlemen's clubs – it was probably impossible to do that job without accommodating the types of requests that Mr. Duste accommodated. And even then, Mr. Duste did so only five times over a course of several years. However, Mr. Duste has alleged no cause of action for wrongful termination, nor does he ask this Court to remedy his termination at all. However unfair, Mr. Duste accepts that he has no cause of action for a private employer's termination for non-invidious reasons.

There is, however, a cause of action for what Chevron and its employees did to Mr. Duste next. During and after Mr. Duste's employment with Chevron, numerous Chevron employees negligently and intentionally told industry clients that Mr. Duste "frequented strip clubs and brothels" with clients. These statements are, among other torts, slander per se under the California Civil Code because they were untrue – there is no evidence that Mr. Duste went to brothels, much less that he frequented them – and they tend to injure plaintiff in his office or profession. Further, because the context of those statements was to Chevron's clients, they were made in the furtherance of Chevron's business, thereby establishing Chevron's vicarious liability. In addition, in failing to prevent its own employees from making inflammatory, unnecessary and materially false statements to industry clients, Chevron itself was negligent and therefore liable directly.

In short, defendants' motion – which is primarily geared to showing that Mr. Duste's termination is not actionable in itself – misses the mark. Defendants have the burden of showing prima facie evidence supporting a jury verdict in their favor, and they simply have not done so with respect to the claims that plaintiff has placed on issue. Defendants' motion should be denied.



## STATEMENT OF FACTS

Mr. Duste began working for defendant Chevron as the Southwestern Territory Manager in January, 1998. (Joint Statement of Undisputed Facts, No. 1.) In October 2001, Mr. Duste was promoted to Sales Manager. (*Id.*, No. 2.) In this capacity, Mr. Duste oversaw a team of approximately seven employees who were responsible for selling aviation fuel. Mr. Duste's regions of management comprised of the Fifty United States, the Caribbean, and Latin America. (*Id.*, No. 3.)

Mr. Duste was often responsible for entertaining Chevron clients. Often, those clients would ask to go to gentlemen's clubs. On five occasions during his tenure, Mr. Duste accommodated that request. (*Id.*, No. 41.)

Chevron investigated Mr. Duste. During the investigation, another Chevron employee named Tim Black intentionally made false statements indicating that Mr. Duste had been frequenting brothels with clients. (*Id.*, No. 41.)

Chevron fired Mr. Duste. (*Id.,* No. 30.)

Following Mr. Duste's termination, various Chevron employees, including Tim Black, told the CEO and minority shareholder of ShelfAir Aviation – a market participant in the fuel industry – that Mr. Duste had been terminated from Chevron because Mr. Duste went to Gentlemen's Clubs and brothels. (*Id.*, No. 45.)

Significantly, the fuel industry is a market with a limited number of suppliers, and participants in the fuel industry are generally familiar with each other. Mr. Duste's reputation in the fuel industry is therefore essential to his livelihood, whether he is working for Chevron or another fuel company. (*Id.*, Nos. 43-44.)

## STATEMENT OF THE ISSUES

**1.     Slander**

Under section 46 of the California Civil Code, "slander" is a "false and unprivileged publication, orally uttered . . . which . . . "[t]ends directly to injure [plaintiff] in respect to his office, profession, trade or business . . . or which, by natural consequence, causes actual damage." Here, during and after Mr. Duste's employment with Chevron, defendants made false statements

to industry clients that Mr. Duste "frequented strip clubs and brothels" with clients. Did defendants slander Mr. Duste?

### 2. Negligence / Negligent Interference with Contract / Negligent Infliction of Emotional Distress

A plaintiff has a cause of action for negligence when defendant breaches a legal duty to plaintiff that causes foreseeable harm. Here, Chevron and its employees owed Mr. Duste a duty to refrain from publishing false statements that tend to injure him in his profession. However, those very employees made statements to Chevron investigators and industry clients that Mr. Duste "frequented strip clubs and brothels" with clients, despite the fact that those statements were untrue, and despite the fact that plaintiff would have to continue working in the industry with those clients. Did defendants breach their duty to Mr. Duste in a manner that caused foreseeable harm?

### 3. Intentional Infliction of Emotional Distress

To show intentional infliction of emotional distress, plaintiff must show defendant engaged in outrageous conduct that intentionally or recklessly caused plaintiff to suffer severe emotional distress. Here, a Chevron employee deliberately made false statements that Mr. Duste was frequenting brothels in conscious disregard of Mr. Duste's rights, and Mr. Duste was fired as a result. Although plaintiff did not seek therapy, he was shocked and humiliated. Does Mr. Duste have a cause of action against defendants for intentional infliction of emotional distress?

## STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper only where there is no genuine issue of material fact precluding judgment for the moving party. *See generally*, *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).

Under *Celotex* and subsequent cases, the moving party bears the burden of showing the absence of a genuine issue of material fact. "Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine

issue of material fact." *Id.* This imposes an initial burden of production on the moving party, which shifts to the nonmoving party if satisfied by the moving party. See 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure 2727, p. 121 (2d ed. 1983).

The burden of production imposed by Rule 56 requires the moving party to make a prima facie showing that it is entitled to summary judgment. *Id.* The manner in which this showing can be made depends upon which party will bear the burden of persuasion on the challenged claim at trial. If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence - using any of the materials specified in Rule 56(c) – that would entitle it to a directed verdict if not controverted at trial. *Id.* Such an affirmative showing shifts the burden of production to the party opposing the motion and requires that party either to produce evidentiary materials that demonstrate the existence of a "genuine issue" for trial or to submit an affidavit requesting additional time for discovery. *Id.*; Fed. Rules Civ. Proc. 56(e), (f).

If the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. See 10A Wright 2727, pp. 130-131; Louis, Federal Summary Judgment Doctrine: A Critical Analysis, 83 Yale L. J. 745, 750 (1974). If the nonmoving party cannot muster sufficient evidence to make out its claim, the moving party is entitled to summary judgment. *Id.*

## ARGUMENT

## I.

### PLAINTIFF'S CLAIMS ARE NOT PREEMPTED BY WORKERS' COMPENSATION LAWS.

Defendants assert that plaintiff's first, second, third, fourth and fifth causes of action are preempted by California's workers' compensation laws.

At the outset, it is worth noting that defendants do not argue that plaintiff's slander claims are precluded by workers' compensation laws, nor could they. Causes of action for defamation

- 4 -

*Duste v. Chevron Products Company, et al.*



1  are not precluded by workers' compensation laws. *Cf. McKinney v. Santa Clara*, 110 Cal. App.
2  3d 787, 168 Cal. Rptr. 89 (1980); *Schneider v. United Air Lines, Inc.*, 208 Cal. App. 3d 71, 75
3  (1989).

4  Nor do California workers' compensation laws preclude the other torts. At the outset, all
5  the tortious statements except one – Tim Black's statement to Chevron investigators – were
6  committed *after* Mr. Duste left Chevron. Defendants do not even attempt to argue that one's tort
7  claims are preempted by workers' compensation laws for torts that did not occur during
8  employment, and there is certainly no authority for that position.

9  Further, even with respect to the sole tortious statement that was made during Mr. Duste's
10 employment with Chevron – Tim Black's statement to Chevron investigators – it is well-settled
11 law that where an employer's misconduct exceeds the normal risks of the employment
12 relationship, workers' compensation does not preempt tort claims. Because, for example, an
13 employer's unlawful discrimination is not a normal incident of employment, the Workers'
14 Compensation Act does not preempt tort claims, whether intentional or negligent. *Accardi v.*
15 *Superior Court,* 17 Cal.App.4th 341 (Cal. 1993) (discrimination in employment is not normal
16 incident of employment, and a claim for damages under FEHA is not preempted by Workers'
17 Compensation Act). Similarly, in *Fretland v. County of Humboldt,* 69 Cal. App. 4th 1478 (1999),
18 the Court reversed a summary judgment for the defendant, holding that plaintiff's emotional
19 distress claims were not barred by worker's compensation where the emotional distress arose out
20 of the employer's disability discrimination. *Id.* at 1492.

21 Here, being subject to unfounded, and indeed malicious comments, made publicly, that one
22 is "frequenting brothels," is plainly not in the normal risks of the employment relationship.
23 Accordingly, Mr. Duste's injuries are not preempted by workers compensation laws in any event.
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

## II.

**DEFENDANTS' MOTION FAILS TO MEET ITS BURDEN  
WITH RESPECT TO PLAINTIFF'S SLANDER CLAIMS.**

### A. Defendants' Statement Were Slanderous Per Se Under Cal. Civil Code Section 46.

Under section 46 of the California Civil Code, "slander" is a "false and unprivileged publication, orally uttered . . . which . . . "[t]ends directly to injure [plaintiff] in respect to his office, profession, trade or business . . . or which, by natural consequence, causes actual damage." Here, during and after Mr. Duste's employment with Chevron, defendants made false statements to industry clients that Mr. Duste "frequented strip clubs and brothels" with clients.

At the outset, there is no real dispute that the statement, "Mr. Duste frequents brothels with clients" tends directly to injure Mr. Duste in respect to his profession and trade. Those allegations were enough to get Mr. Duste fired by Chevron, and spreading those statements through the rest of the industry will only hurt Mr. Duste further. Significantly, there is no evidence that Mr. Duste "frequented brothels with clients." The most defendants can show is that Mr. Duste went to gentlemen's clubs, (*i.e.,* strip clubs), five times over the course of several years. There is no evidence at all that he went to brothels, much less that he "frequented" brothels with clients.

Defendants assert that Mr. Duste's slander claims are subject to summary judgment because plaintiff cannot show substantial damages. Defendants assert that Mr. Duste cannot show actual damage because he found a new job and never sought therapy. Defendants further assert that Mr. Duste cannot show any impact on his office, profession, trade or business as required by Cal. Civ. Code Section 46.[1] This analysis turns Section 46 on its head. Under Section 46, as noted, statements that "*[t]end* to injure [plaintiff] in respect to his office, profession, trade or business" are defamation per se. Cal. Civ. Code § 46 (emphasis added). A plaintiff need not show "actual damage" to his profession when he is subject to false statements that are slander per se; rather, plaintiff recovers *presumed* damages if the statement *tends* to injure plaintiff in his

---

[1] This argument also flies in the face of the undisputed fact – which defendants agreed to – that the fuel industry is a market with a limited number of suppliers, and participants in the fuel industry are generally familiar with each other. Mr. Duste's reputation in the fuel industry is therefore essential to his livelihood, whether he is working for Chevron or another fuel company.

1  profession, and the jury then considers whether to award additional damages for such things as
2  "injuries to business" and "hurt feelings," among others. California Civil Jury Instructions, 1700
3  (West 2009). The fact that Mr. Duste found a new job and did not seek therapy might be proper in
4  a closing argument, but not here.
5      In short, defendants orally published the false statement that Mr. Duste "frequents brothels
6  with clients." The statement is false and tends to injure Mr. Duste in his trade and profession. It is
7  slander.

### B. The Slanderous Statements Were Not Privileged.

9      Defendants attempt to assert that their slanderous statement were in furtherance of a
10 common interest sufficient to warrant privilege under section 47(c) of the California Civil Code.
11 Under Cal. Civ. Code § 47(c), a communication falls within the common interest privilege if it is:

> without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information.

15 Cal. Civ. Code § 47(c). If defendant shows that the communication is privileged, plaintiff bears
16 the burden of proving malice. *Lundquist v. Reusser*, 7 Cal. 4th 1193, 1212, 875 P.2d 1279, 1280
17 (Cal. 1994).
18     Here, there are two sets of defamatory statements: 1) Chevron employee Tim Black's
19 statement to Chevron investigators that Rick Duste took clients to brothels, and 2) statements of
20 Chevron employees, including Tim Black, to the Chief Executive Office of a client company that
21 Rick Duste took clients to brothels. As the second set of statements, there is no meritorious
22 argument that the common interest privilege applies, and defendants do not attempt to make such
23 an argument.
24     As to the first set of statements, plaintiff concedes that the circumstance of the statement –
25 an internal company investigation – warrants the common interest privilege. However, this
26 statement, too, falls outside the privilege because Section 47(c) of the Civil Code specifies that the
27 statement must be "without malice." Here, Mr. Black had subsequently admitted that his

- 7 -

*Duste v. Chevron Products Company, et al.*

1   allegations that Mr. Duste frequented gentlemen's brothels were wrong, that he knew they were
2   wrong, and that he made the allegations in reckless disregard for Mr. Duste's rights.  Black's Law
3   Dictionary defines "malice" as "[t]he intentional doing of a wrongful act without just cause or
4   excuse," and a malicious act is defined as "wrongful and done intentionally without just cause or
5   excuse or as a result of ill will."  Black's Law Dictionary 958 (6th ed. 1990).  Because Mr. Black's
6   statements during the internal investigation were textbook malice, they fall short of the common
7   interest privilege.

### C. Chevron is Vicariously Liable for its Employees' Slanderous Statements.

10   The rule of *respondeat superior* is familiar and simply stated: an employer is vicariously
11   liable for the torts of its employees committed within the scope of the employment.  *Perez v. Van*
12   *Groningen & Sons, Inc.* 41 Cal. 3d 962, 967 (Cal. 1986).  Equally well established is the principle
13   that an employee's willful, malicious and even criminal torts may fall within the scope of his or
14   her employment for purposes of *respondeat superior*, even though the employer has not
15   authorized the employee to commit crimes or intentional torts.  *Mary M. v. City of Los Angeles*, 54
16   Cal. 3d 202, 209 (Cal. 1991); *John R. v. Oakland Unified School Dist.* 48 Cal. 3d 438, 447 (Cal.
17   1989); *Carr v. Wm. C. Crowell Co*. 28 Cal. 2d 652, 654 (Cal. 1946).

18   Significantly, California no longer follows the traditional rule that an employee's actions
19   are within the scope of employment only if motivated, in whole or part, by a desire to serve the
20   employer's interests.  *Lisa M. v. Henry Mayo Newhall Mem'l Hosp*., 12 Cal. 4th 291 298 (Cal
21   1994).  Rather, California courts use the "causal nexus" test.  *Id.*  Under this test, an employer will
22   be held liable for a tort that had a causal nexus to the employee's work.  *Id.*  In other words, it is
23   causation, not motive, that is the focus of vicarious liability in California.  If an injury arises from
24   a situation or circumstance that was caused by employment, the employer is liable, regardless if
25   the tort was done in furtherance of work.  *Id.*

26   To illustrate California's causal nexus test for vicarious liability, In *Carr v. Wm. C.*
27   *Crowell Co.,* 28 Cal.2d 652 (Cal. 1946) the California Supreme Court held a building contractor
28   liable for injuries caused when an employee, angry at a subcontractor's employee for interfering in

his work, threw a hammer at the other worker's head. *Id.* at 654. The Court rejected the defendant's claim that its employee was not acting within the scope of employment because he could not have intended by his conduct to further the employer's interests: "It is sufficient, however, if the injury resulted from a dispute *arising out of* the employment. . . . It is not necessary that the assault should have been made as a means, or for the purpose of performing the work he [the employee] was employed to do." *Id., Hiroshima v. Pacific Gas & Elec. Co.* 18 Cal. App. 2d 24, 28 (Cal. 1936).

Under this rule, even torts committed by drunk, off duty workers were found to be within the causal nexus of employment because they started drinking while they were still on the job site. In *Rodgers v. Kemper Constr. Co.*, 50 Cal. App. 3d 608, 614-616 (Cal. 1965), off-duty employees, who had been drinking beer at the jobsite, assaulted workers for another contractor after requesting and being refused a ride on a bulldozer driven by one of the victims. Applying the analysis developed in *Carr,* the Court of Appeal found substantial evidence the attack was within the scope of the assailants' employment. The assailants and victims, the court noted, were "complete strangers" until their work brought them together; thus the dispute could not have derived from "personal malice unrelated to the employment." *Rodgers*, 50 Cal. App. 3d at 621. Rather, a work-related dispute was the "proximate cause" of the attack. *Id.*

### 1. Tim Black's False Statements Made During the Investigation Were Within a Causal Nexus With His Employment With Chevron.

As noted above, Tim Black's statements to Chevron investigators were materially false statements requisite to a claim for slander. Further, they were made in malice, thereby casting them outside the protections of the common interest privilege under Section 47(c) of the California Civil Code.

Defendants do not even attempt to dispute that Chevron is vicariously liable for these statements. And for good reason. As noted above, the causal nexus test focuses on causation rather than motive, and an employer will be held liable for a tort that had a causal nexus to the employee's work. *Lisa M.*, 12 Cal. 4th at 298. Here, Mr. Black's statements to Chevron investigators were plainly within a causal nexus of his employment with Chevron. Had Mr. Black

- 9 -

*Duste v. Chevron Products Company, et al.*

not been employed by Chevron, he never would have participated in the investigation, and, by axiom, he never would have made the statements. Indeed, participating in a company investigation, maliciously or not, bears a far stronger causal nexus with employment than throwing a hammer at someone's head (*Carr,* 28 Cal. 2d at 654), or drinking on the job and getting into a fight *after* work (*Rodgers*, 50 Cal. App. 3d at 621).

Here, Mr. Black's statements were causally connected to his employment. Under the causal nexus test, Chevron is vicariously liable for them.

### 2. Chevron is Vicariously Liable for its Employees' Statements to Industry Clients.

It is undisputed that various Chevron employees, including Tim Black, told the Chief Executive Officer of SheltAir Aviation that Mr. Duste had frequented brothels with clients. Defendants assert that these statements were not in the course and scope of their employment because they violated Chevron's policies. This argument, however, uses the wrong analysis. As noted above, California does not use the traditional rule that an employee's actions are within the scope of employment only if motivated, in whole or part, by a desire to serve the employer's interests. Rather, California courts use the "causal nexus" test. *Lisa M.*, 12 Cal. 4th at 298. Here, the issue is whether there is *causation* between the employment and the tort, not whether the *motive* of the tort was employment.

In other words, the fact that Chevron's employees were violating Chevron policies is of no consequence. Certainly, throwing a hammer at someone's head or drinking on the job and getting into a fight after work violated company policies as well, yet the California Supreme Court did not focus on those points. Rather, the California Supreme Court focused on causation: did the tort bear a common nexus with employment, or would it have arisen independently of employment?

At a minimum, this case presents a causal nexus similar to the one in *Rodgers*, and probably a stronger nexus. In *Rodgers*, the employees engaged in prohibited interactions with non-employees by getting into a fight with them after work. Here, the employees engaged in interactions that were initially permissible (inasmuch as Chevron employees frequently speak to Chevron clients), but that became impermissible when the employees started talking about Mr.

Duste. In *Rodgers*, the employees engaged in their tortious behavior when they were off duty. Here, it is not clear whether the employees made the slanderous statements while technically on the job. However, in both cases, the employees were "complete strangers" with the non-employees they interacted with until their work brought them together; thus the tort could not have arisen "unrelated to the employment." *Rodgers*, 50 Cal. App. 3d at 621.

Thus, the slanderous statements of the individual Chevron employees in this case stems from a "causal nexus" with their employment. This causal nexus, if anything, is stronger than the ones addressed by the California Supreme Court in *Carr* and *Rodgers*. Chevron is vicariously liable for its employees on plaintiff's slander claims.

### III.

### DEFENDANTS' MOTION FAILS TO MEET ITS BURDEN WITH RESPECT TO PLAINTIFF'S NEGLIGENCE CLAIMS.

Plaintiff's complaint contains three negligence claims: ordinary negligence, negligent interference with contractual relations, and negligent interference with contractual relations. Each of the three causes of action require plaintiff to show that defendant breached a legal duty to plaintiff that causes foreseeable harm. *Ladd v. County of San Mateo,* 12 Cal.4th 913, 917 (Cal 1996); *Ann M. v. Pacific Plaza Shopping Center,* 6 Cal.4th 666, 673 (Cal. 1993), superceded on other grounds, *Saelzer v. Advanced Group 400*, 25 Cal 4th 763 (2001).[2]

At the outset, it is clear that Mr. Black, as well as the other Chevron employees who slandered Mr. Duste, did so in violation of their duty. Everyone has a duty to refrain from publishing false statements that tend to injure another in his or her profession. Cal. Civ. Code § 46. They each breached this duty when they made statements to Chevron investigators and industry clients that Mr. Duste "frequented strip clubs and brothels" with clients, despite the fact that those statements were untrue, and despite the fact that plaintiff would have to continue

---

[2] Although negligent infliction of emotional distress and negligent interference with contract are more specific causes of action they are also governed by the duty-breach-causation-damages rule. Cf. California Civil Jury Instruction Nos. 1620, 2204. Accordingly, they involve the same analysis and are addressed here together.

working in the industry with those clients. As a result, all of the involved Chevron employees breached their duty to Mr. Duste.

As a result, Mr. Duste lost his job and was shocked and humiliated. Because it is foreseeable that, by making those statements, that type of harm would result, these are compensable damages that are awardable through a cause of action for ordinary negligence. Further, the loss of Mr. Duste's salaried position with Chevron is also compensable through the more specific remedy of negligent interference with contract (also known as negligent interference with economic advantage). California Civil Jury Instruction No. 2204. Finally, because Mr. Duste's shock and humiliation is an emotional distress, those injuries are properly compensated through negligent infliction of emotional distress. Accordingly, plaintiff's negligence claims are proper, and defendants' motion for summary judgment should be denied.[3]

## IV.

### DEFENDANTS' MOTION FAILS TO MEET ITS BURDEN WITH RESPECT TO PLAINTIFF'S CLAIMS FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

To show intentional infliction of emotional distress, plaintiff must show defendant engaged in outrageous conduct that intentionally or recklessly caused plaintiff to suffer severe emotional distress. *Christensen v. Superior Court,* 54 Cal.3d 868, 903 (Cal. 1991). Here, various Chevron employees deliberately made false statements that Mr. Duste was frequenting brothels in conscious disregard of Mr. Duste's rights, and Mr. Duste was fired as a result. Defendants take the position that their conduct was not extreme and outrageous, and that Mr. Duste did not suffer emotional distress.

Defendant's positions are mistaken because jury questions exist on both issues. At the outset, "outrageous" conduct is conduct that "exceed[s] the bounds of employer conduct tolerated by a decent society." *Agarwal v. Johnson,* 25 Cal.3d 932, 946 (1972), disapproved on other

---

[3] There is no merit to defendants' assertion that Mr. Black and the other Chevron employees were acting outside the course and scope of their duties for purposes of vicarious liability. As set forth above, each of those statements arose from circumstances that shared a causal nexus with their employment, which is the standard under California law. *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291 298 (Cal. 1995). Plaintiff does not restate the argument here because it is the same as the one set forth under Argument II C above.

- 12 -

*Duste v. Chevron Products Company, et al.*

grounds, *White v. Ultramar*, 21 Cal.4th 563 (1999).  Behavior which may be considered outrageous includes abuse of a relationship or position which gives the defendant power to damage the plaintiff's interest.  *Agarwal,* 25 Cal.3d at 946.  However, mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities are not sufficient for liability based upon a cause of action for intentional infliction of emotional distress.  *Delfino v. Agilent Technologies, Inc.* 145 Cal. App. 4th 790, 809 (Cal. 2006), citing Rest.2d Torts, § 46, com. d.

This case does not concern mere trivialities or insults.  It involves Mr. Black, a Chevron employee deliberately and maliciously telling Chevron officials *who were investigating Mr. Duste* that he was frequenting brothels with clients.  In other words, this case involves someone intentionally costing Mr. Duste his job, for which he had worked his entire career, for reasons that were simply made up. To put it simply, this is conduct that should not be tolerated by decent citizens.  It is malicious, oppressive and outrageous.

Significantly, the severity of a plaintiff's emotional distress is a jury question "inextricably related to the conduct causing that distress."  *Abelson v. National Union Fire Ins. Co.*, 28 Cal. App. 4th 776, 789 (Cal. 1994), (citation and internal quotation marks omitted).  This is because a jury may reach inferential conclusions, and a jury may infer emotional distress by circumstances that, by their nature, would naturally cause such distress.  Here, it is reasonable to expect – and infer – that anyone would be distressed by being subject to the slanderous and inflammatory statements in question.  Thus, in light of the malice involved in Mr. Black's conduct, Mr. Duste's emotional distress (which is greatly minimized by defendants' motion) is a question for the jury.

Defendants' motion for summary judgment on plaintiff's claims for intentional infliction of emotional distress should be denied. [4]

/ / /

/ / /

---

[4] There is no merit to defendants' assertion that Mr. Black and the other Chevron employees were acting outside the course and scope of their duties for purposes of vicarious liability.  As set forth above, each of those statements arose from circumstances that shared a causal nexus with their employment, which is the standard under California law.  *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291 298.  Plaintiff does not restate the argument here because it is the same as the one set forth under Argument II C above.

**CONCLUSION**

Defendants' motion for summary judgment should be denied.  At the outset, Mr. Duste's claims are not preempted by workers' compensation laws because the majority of them occurred *after* plaintiff's employment was terminated.  Further, workers' compensation laws do not preempt defamation causes of action like this one.  Finally, plaintiff's remaining claims for emotional distress stemming from Tim Black's statements during the investigation do not arise from the normal risks of the employment relationship, and therefore do not fall within the scope of workers compensation laws.

Defendants' motion for summary judgment should be denied with respect to Mr. Duste's claims for slander because various Chevron employees orally published false statements about Mr. Duste that tended to injury him in his profession.  Further, those statements were malicious and made to third parties, and are therefore not privileged.  Finally, Chevron is vicariously liable for those statements because they were made in contexts that were in a causal nexus with employment.

Defendants' motion for summary judgment should be denied with respect to Mr. Duste's various negligence claims because all Chevron employees had a duty to refrain from publishing false statements concerning plaintiff, several of them breached that duty, causing foreseeable harm.  Further, Chevron is vicariously liable for that negligence the statements were made in contexts that were in a causal nexus with employment.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /



- 14 -

*Duste v. Chevron Products Company, et al.*

1    Finally, Mr. Duste's claims for intentional infliction of emotional distress should proceed
2  because deliberately making false statements that someone is frequenting brothels with clients,
3  when it is obvious that statement will result in a termination of employment, is outrageous and
4  should not be tolerated by a decent society.  In light of the magnitude of that statement, the
5  remaining issues are jury questions under controlling case law.[5]

6  Dated: October 14, 2009                    Respectfully Submitted,

7                                             WALSTON CROSS, Attorneys

8                                             _____
9                                             By: Gregory S. Walston

10                                            ATTORNEYS FOR PLAINTIFF



---

[5] Plaintiff concedes his remaining causes of action.