UNITED STATES  DISTRICT COURT

Northern District of California

RICHARD A DUSTE,

              Plaintiffs,

   v.

CHEVRON PRODUCTS COMPANY,

              Defendant.

_____/

No. C 08-3980 MEJ

**ORDER RE DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

Pending before the Court is Defendant Chevron U.S.A. Inc.'s Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment.  (Dkt. #22.)  Plaintiff Richard Duste has filed an Opposition (Dkt. #28), to which Defendant filed a Reply (Dkt. 33).  On November 5, 2009, the Court held oral argument in this matter.  After consideration of the parties' briefs and oral arguments, relevant legal authority, and good cause appearing, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion as follows.

## I.  BACKGROUND

Plaintiff Richard Duste ("Plaintiff") began working for Defendant Chevron U.S.A., Inc. ("Defendant" or "Chevron") as the Southwestern Territory Manager on January 16, 1998.  (Joint Statement of Undisputed Facts ("JSOF") ¶1, Dkt. #26; Pl.'s Opp.'n at 2:2-3, Dkt. #28.)  In October 2001, Plaintiff was promoted to the position of sales manager.  (JSOF ¶2, Dkt. #26; Pl.'s Opp'n at 2:3-4, Dkt. #28.)  In this capacity, Plaintiff was responsible for directly managing a sales force of six territory managers for the Global Aviation Division's customers in the United States, the Carribean, and Latin America.  (JSOF ¶3, Dkt. #26.)  Additionally, as sales manager, Plaintiff was responsible for reviewing and approving expense reports submitted by his subordinates.  (JSOF ¶4, Dkt. #26.)

According to Plaintiff, he was also responsible for entertaining Defendant's clients.  (Pl.'s

UNITED STATES DISTRICT COURT
For the Northern District of California

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1    Opp'n at 2:8, Dkt. #28.)  To this end, Plaintiff asserts that "he was frequently required to entertain

2    executives from oil-consuming companies," and "as a practical matter, entertaining oil-company

3    executives does not always involve trips to fancy tapas restaurants and nice wine bars." (Pl.'s Opp'n

4    at 1:4-6, Dkt. #28.)  Thus, Plaintiff asserts that the clients often would ask to go to gentlemen's

5    clubs, and he accommodated such requests and accompanied clients to gentlemen's clubs on five

6    occasions.  (JSOF ¶41, Dkt. #26; Opp'n at 2:8-10, Dkt. #28.)  On two such occasions, he purchased

7    "lap dances" for himself.  (Pope Decl., Ex. A 133:12-135:4, Dkt. #23.)

8       As a Chevron employee, Plaintiff was aware that he was expected to follow Defendant's

9    policies and procedures.  (JSOF ¶6, Dkt. #26.)  During Plaintiff's employment, Defendant had in

10   place a Travel and Expense Accounting Policy ("TEA"), Policy 585.  (JSOF ¶5, Dkt. #26.)  Plaintiff

11   was aware of the TEA Policy.  (JSOF ¶5, Dkt. #26.)  Further, as an expense report approver,

12   Plaintiff understood that his responsibilities included: ensuring that employees understand the

13   Corporate Travel policy; the business purpose for the trip; the need to exercise good judgment while

14   traveling; reviewing expense reports for appropriateness and correctness; reviewing and promptly

15   approving for reimbursement all reasonable and necessary expenses incurred by employees

16   conducting business on Defendant's behalf; and ensuring that employees submit expense reports in a

17   timely manner consistent with the expense reporting guidelines.  (JSOF ¶7, Dkt. #26.)

18       Plaintiff was also familiar with a variety of examples of misuse of the company travel policy,

19   including submission of false expenses and inappropriate entertainment of clients.  (JSOF ¶8, Dkt.

20   #26.)  Plaintiff understood that, as a supervisor, he was responsible for satisfying himself that his

21   subordinates' expense reports were accurate.  (JSOF ¶9, Dkt. #26.)  Plaintiff was also responsible for

22   reviewing his direct reports' expense reports, making inquiries when follow-up was required, and

23   when appropriate, approving the expense reports submitted.  (JSOF ¶10, Dkt. #26.)  Plaintiff

24   understood that violation of Defendant's travel and expense reporting policy may subject the

25   employee to disciplinary action that may include non-reimbursement of expenses, cancellation of

26   credit card privileges, and disciplinary action up to and including termination.  (JSOF ¶11, Dkt.

27   #26.)   As part of its finance and auditing function, Defendant implements periodic spot checks in

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1   which employee expense reports are randomly selected for review.  (JSOF ¶12, Dkt. #26.)  In early

2   2007, a routine spot check resulted in the random identification of expense reports submitted by an

3   employee named Chris Browning.  (JSOF ¶13, Dkt. #26.)  The expense reports pulled during the

4   spot check were from a period in 2005 when Browning reported to Plaintiff, who was responsible

5   for reviewing and approving reports that Browning submitted.  (JSOF ¶14, Dkt. #26.)  The expense

6   reports showed irregularities, and as a result, Doug Hinzie, president of Defendant's Global Aviation

7   Division, and Astley Blair, Defendant's Division Finance Office for the Global Supply and Trading

8   organization, initiated an investigation with Debra Taylor in Defendant's Corporate Security

9   Department.  (JSOF ¶15, Dkt. #26; Taylor Decl., ¶¶1-2, Dkt. #25.)

10      Taylor's investigation included a review of Browning's expense reports for 2005 and into

11   2006, a review of email messages automatically generated by Defendant's travel and expense

12   reporting system to Browning and Plaintiff, and witness interviews.  (JSOF ¶16, Dkt. #26.)  Taylor

13   concluded as a result of her investigation that Browning had engaged in a pattern of systematic

14   fraudulent expense reporting, which included submitting claims for reimbursement for airline tickets

15   where flights were not actually taken, and for which Browning had received reimbursement from the

16   airline as well; submitting claims for excessive entertainment expenses; and submitting claims for

17   entertainment expenses at questionable establishments, such as strip clubs.  (JSOF ¶17, Dkt. #26.)

18   In all, Browning submitted over $28,000 in fraudulent expenses that were approved by Plaintiff.

19   (JSOF ¶18, Dkt. #26.)

20      While investigating Browning, Taylor found at least ten travel and expense reporting system

21   notifications itemizing delinquent and irregular expense report items that Browning had incurred on

22   his corporate credit card from mid-2005 to early 2006.  (JSOF ¶19, Dkt. #26.)  Plaintiff was copied

23   on these email messages, in his capacity as Browning's manager.  (JSOF ¶20, Dkt. #26.)  However,

24   Plaintiff had no conversations with Browning about the delinquent or excessive charges referenced

25   on the emails he received.  (JSOF ¶21, Dkt. #26.)  Plaintiff states that he considered any charge over

26   $500 for entertainment and meals as something he would have wanted to look into.  (JSOF ¶22, Dkt.

27   #26.)

28

Page 3 of  25

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Given the magnitude of Browning's fraudulent submissions, Taylor arranged for an

2    interview with Plaintiff in August 2007.  (JSOF ¶23, Dkt. #26.)  The interview lasted for about three

3    hours, during which time Taylor reviewed spreadsheets of Browning's charges with Plaintiff and

4    asked him about the conduct for which Browning had been terminated.  (JSOF ¶24, Dkt. #26.)

5    During the interview, Plaintiff was also given the opportunity to respond to questions and to explain

6    his side of the story.  (JSOF ¶25, Dkt. #26.)  In his deposition, Plaintiff stated that, although

7    Browning's expenses were "kind of obvious" on the spreadsheet presented by Taylor, Browning

8    "hid" them in a "sea of charges," making it "not obvious" to him while reviewing the expense

9    reports.  (Pope Decl., Ex. A 163:5-18, Dkt. #23.)  At the conclusion of the interview, there was

10   nothing that Plaintiff had wanted to say, but was prevented from doing so.  (Pope Decl., Ex. A

11   171:25-172:3, Dkt. #23.)

12   After conducting her investigation, Taylor concluded that Plaintiff had approved a large

13   number of inappropriate charges, including strip club entertainment with clients, airfare charges

14   where trips were not taken, and high dollar cash expenses from June 2005 to February 2006.  (JSOF

15   ¶26, Dkt. #26.)  Other than quibbling with whether "strip club" charges are appropriate, Plaintiff

16   admits that he approved a large number of inappropriate charges, as detailed above.  (JSOF ¶27,

17   Dkt. #26.)  After carefully considering the results of Taylor's investigation, Doug Hinzie made the

18   decision to terminate Plaintiff's employment.  (JSOF ¶28, Dkt. #26.)  Hinzie decided to terminate

19   Plaintiff because, based on his approval of Browning's fraudulent expense reports, he concluded that

20   Plaintiff had abdicated his responsibility as a manager: his conduct was at best grossly negligent, or

21   at worst, intentional misconduct.  (JSOF ¶29, Dkt. #26.)

22   Hinzie met with Plaintiff on October 12, 2007 and advised him that his employment was

23   terminated.  (JSOF ¶30, Dkt. #26.)  During the meeting, Plaintiff repeated the same information and

24   explanations that he had provided to Taylor during his interview with her.  (JSOF ¶32, Dkt. #26.)

25   During his deposition, Plaintiff stated that he did not believe that his termination by Defendant

26   violated any company policies or procedures.  (JSOF ¶51, Dkt. #26.)  He also understood during the

27   course of his employment at Chevron that his employment was terminable "at will."  (JSOF ¶50,

28

Page 4 of  25

1    Dkt. #26.)

2    According to Hinzie, the information about the decision to terminate Plaintiff was

3    communicated within Chevron to only a handful of individuals, on a confidential basis, whom

4    Hinzie felt had a business need to know.  (JSOF ¶31, Dkt. #26.)  However, it is undisputed that

5    Chevron officials learned that Plaintiff had "frequented" gentlemen's clubs and "brothels" from

6    fellow Chevron employee Tim Black, who made those allegations against Plaintiff during his

7    participation in an official Chevron investigation into travel expense irregularities.  (JSOF ¶38, Dkt.

8    #26.)

9    Tim Black was a salesman at Chevron who reported to Plaintiff in 2005 and 2006.  (JSOF

10   ¶39, Dkt. #26.)   His job duties did not include supervision, investigation, discipline, termination, or

11   corporate policy-making.  (JSOF ¶39, Dkt. #26.)  He was instructed to keep Defendant's

12   investigation into Plaintiff's conduct confidential.  (JSOF ¶40, Dkt. #26.)  Black has subsequently

13   admitted that his allegations that Plaintiff frequented gentlemen's clubs and brothels were wrong,

14   that he knew they were wrong, and that he made the allegations in reckless disregard for Plaintiff's

15   rights.  (JSOF ¶42, Dkt. #26.)

16   It is also undisputed that various Chevron employees, including Tim Black, told Ed Zwirn,

17   the CEO and minority shareholder of SheltAir Aviation –  a former Chevron customer and a market

18   participant in the fuel industry – that Plaintiff had been terminated because he went to gentlemen's

19   clubs and brothels.  (JSOF ¶45, Dkt. #26; Def.'s Mot. at 18:12-18, Dkt. #22.)

20   Plaintiff denies frequenting gentlemen's clubs and brothels.  (JSOF ¶41, Dkt. #26.)  He has

21   never knowingly attended a brothel, and claims that he only accompanied clients to gentlemen's

22   clubs on approximately five occasions over several years when clients brought him there.  (JSOF

23   ¶41, Dkt. #26.)

24   Because the fuel industry is a market with a limited number of suppliers, and participants in

25   the fuel industry are generally familiar with each other, Plaintiff feels that his reputation in the

26   industry is essential to his livelihood, whether he is working for Defendant or another company.

27   (JSOF ¶¶43-44, Dkt. #26.)  However, during his deposition, Plaintiff could identify no prospective

28

1   employment that he has been unable to obtain due to Defendant allegedly disclosing that he was no

2   longer with the company, and he could identify no other damages allegedly flowing from any such

3   disclosure.  (JSOF ¶48, Dkt. #26.)  In fact, approximately 1½ months after his termination, Plaintiff

4   obtained other employment with British Petroleum.  (JSOF ¶46, Dkt. #26.)  In 2008, Plaintiff moved

5   voluntarily from British Petroleum to his current employer, ConocoPhillips.  (JSOF ¶47, Dkt. #26.)

6

7        On August 20, 2008, Plaintiff filed the present Complaint, alleging nine causes of action: (1)

8   negligence; (2) intentional interference with contractual relationships; (3) negligent interference with

9   contractual relationships; (4) intentional infliction of emotional distress; (5) negligent infliction of

10  emotional distress; (6) slander; (7) libel; (8) breach of contract; and (9) unfair business practices

11  under California Business & Professions Code section 17200, *et seq*.  (Dkt. #1.)  Defendant filed the

12  present motion on October 1, 2009.  (Dkt. #22.)

13                          **II.  LEGAL STANDARD**

14       Summary judgment is proper when the "pleadings, depositions, answers to interrogatories,

15  and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

16  any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ.

17  P. 56(c).  An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find

18  for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  A fact is

19  "material" if it may affect the outcome of the case.  *Id.* at 248.  "In considering a motion for

20  summary judgment, the court may not weigh the evidence or make credibility determinations, and is

21  required to draw all inferences in a light most favorable to the non-moving party."  *Freeman v.*

22  *Arpaio*, 125 F.3d 732, 735 (9th Cir.1997).

23       A principal purpose of the summary judgment procedure is to identify and dispose of

24  factually unsupported claims.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  The party

25  moving for summary judgment bears the initial burden of identifying those portions of the pleadings,

26  discovery, and affidavits which demonstrate the absence of a genuine issue of material fact.  *Id.* at

27  323.  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1   demonstrate that no reasonable trier of fact could find other than for the moving party.  *Id.*

2         Once the moving party meets this initial burden, the non-moving party must go beyond the

3   pleadings and by its own evidence "set [forth] specific facts showing [that there is] a genuine issue

4   for trial." Fed. R. Civ. P. 56(e).  The non-moving party must "identify with reasonable particularity

5   the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th

6   Cir.1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir.1995)) (stating that it is

7   not a district court's task to "scour the record in search of a genuine issue of triable fact").  The

8   "opposing party may not rely merely on allegations or denials in its own pleading; rather, its

9   response must-by affidavits or as otherwise provided in this rule-set out specific facts showing a

10  genuine issue for trial." Fed. R. Civ. P. 56(e).  Thus, the non-moving party must come forward with

11  more than "the mere existence of a scintilla of evidence." *Anderson*, 477 U.S. at 252.  If the

12  non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of

13  law.  *Celotex*, 477 U.S. at 323.

14                              **III.  DISCUSSION**

15        In its motion, Defendant argues that there is no evidentiary support for any of Plaintiff's

16  claims, and that the undisputed facts support summary judgment in its favor.  Defendant also argues

17  that Plaintiff's first through fifth causes of action are preempted by the California Workers'

18  Compensation Act ("CWCA"), Cal. Lab. Code § 3602.  The Court shall address each claim and the

19  parties' related arguments in turn.

20  **A.      Preemption**

21        Defendant first contends that it is entitled to summary judgment on Plaintiff's claims for

22  negligence, intentional and negligent interference with contractual relations, and intentional and

23  negligent infliction of emotional distress because these claims are preempted by CWCA.

24  Specifically, Defendant argues that these claims are premised entirely on events alleged to have

25  occurred during Plaintiff's employment - namely, the investigation into his conduct as a manager

26  and the discipline that was imposed as a result.  (Def.'s Mot. at 10:22-28, Dkt. #22.)

27        In response, Plaintiff argues that all the tortious statements except one were committed after

28

1   he left Chevron, not during his employment, and Defendant's argument must therefore fail.  (Pl.'s

2   Opp'n at 5:4-6, Dkt. #28.)

3          With certain statutory and judicial exceptions, a compensation claim under the CWCA

4   provides the exclusive remedy against an employer for a work-related injury.  Cal. Lab. Code §

5   3602; *Lenane v. Continental Maritime of San Diego, Inc.*, 61 Cal. App. 4th 1073, 1081 (1998)

6   (citing *Bonner v. Workers' Comp. Appeals Bd.*, 225 Cal. App. 3d 1023, 1032 (1990)).  The purpose

7   of this provision "is a presumed 'compensation bargain' pursuant to which the employer assumes

8   liability for the work-related personal injuries . . . without regard to fault in exchange for limitations

9   on the amount of that liability," and the employee "is afforded relatively swift and certain payment

10  of benefits to cure or relieve the effects of work-related injury without having to prove fault but, in

11  exchange, gives up the wider range of damages potentially available in tort."  *Lenane*, 61 Cal. App.

12  4th at 1081 (internal citations and quotations omitted).

13         "[C]ompensable injuries may be physical, emotional or both, so long as they are disabling."

14  *Livitsanos v. Superior Court*, 2 Cal.4th 744, 753 (1992) (citations omitted).  Thus, "[a]n employee

15  who suffers a disabling emotional injury caused by the employment is entitled, upon appropriate

16  proof, to workers' compensation benefits, including any necessary disability compensation or

17  medical or hospital benefits."  *Id.* at 754 (citations omitted).  However, the alleged torts must

18  "comprise 'a normal part of the employment relationship'"  *Id.* at 756 (quoting *Cole v. Fair Oaks*

19  *Fire Prot. Protection Dist.*, 43 Cal.3d 148, 160 (1987)).

20         In *Shoemaker v. Myers*, the plaintiff was threatened, intimidated, harassed, disciplined, and

21  eventually terminated as the result of an investigation he conducted of possible illegal practices by

22  his employer.  52 Cal.3d 1, 7-9 (1990).  The plaintiff included allegations of physical illness and

23  disability resulting from the acts of defendants.  *Id.* at 10.  One manager said he knew the

24  termination would not be upheld, but he "wanted to cause [plaintiff] as much grief as possible."  *Id.*

25  at 25.  Despite the egregiousness of the behavior, the California Supreme Court ruled that the

26  conduct alleged was a "normal part of the employment relationship," and that the plaintiffs'

27  emotional distress claims were therefore preempted by the CWCA.  *Id.*

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Given this standard, it appears at least plausible that Plaintiff's claims could be preempted

2    under the CWCA.  However, Plaintiff does not include allegations of physical illness and disability

3    resulting from the acts of Chevron and its employees.  Further, Plaintiff argues that all the tortious

4    statements at issue here except one were committed after he left Chevron, not during his

5    employment.  It is not clear that statements made after he was no longer employed are considered a

6    "normal part of the employment relationship," and Defendant did not respond directly to this

7    argument, either in its motion or reply brief.  Accordingly, because Defendant has failed to meet its

8    burden, the Court finds it appropriate to consider the claims on an individual basis.

9    **B.    Negligence**

10   Plaintiff's first cause of action is for negligence.  He alleges that Defendant and its

11   employees owed him a duty to refrain from publishing false statements that tend to injure him in his

12   profession, yet Chevron employees made statements to industry clients that he "frequented strip

13   clubs and brothels," despite the fact that those statements were untrue.  (Pl.'s Opp'n at 3:5-10, Dkt.

14   #28.)  Plaintiff further alleges that Chevron is vicariously liable for its employees' conduct on a

15   theory of respondeat superior.  (Compl. ¶37, Dkt. #1.)

16   Defendant challenges Plaintiff's negligence claim on the ground that he cannot establish a

17   prima facie case to sustain the claim.  (Def.'s Mot. at 12:14-15, Dkt. #22.)  Specifically, Defendant

18   maintains that Plaintiff has identified no duty of care, breach of that duty, or resulting damages, with

19   respect to Chevron.  (Def.'s Reply at 2:24-25, Dkt. #33.)

20   In response, Plaintiff argues that it is clear that Tim Black and "other Chevron employees"

21   slandered him in violation of their "duty," because "everyone has a duty to refrain from publishing

22   false statements that tend to injure another in his or her profession."  (Pl.'s Opp'n at 11:19-21, Dkt.

23   #28.)  Plaintiff cites to California Civil Code section 46 in support of his argument.  (Pl.'s Opp'n at

24   11:20-22, Dkt. #28.)

25   In order to state a cause of action for negligence, a plaintiff must allege: (1) the defendant

26   has a legal duty to use due care; (2) the defendant breached such legal duty; (3) the defendant's

27   breach was the proximate or legal cause of the resulting injury; and (4) damage to the plaintiff.

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1  *Ladd v. Cnty of San Mateo*, 12 Cal.4th 913, 917 (1996).  The existence of a legal duty on the part of

2  the defendant is a question of law to be determined by the court.  *Ky. Fried Chicken of Cal., Inc. v.*

3  *Super. Ct.*, 14 Cal.4th 814, 819 (1997); *Isaacs v. Huntington Mem'l Hosp.*, 38 Cal.3d 112, 124

4  (1985).

5          Under the theory of respondeat superior, an employer is liable for the wilful and malicious

6  torts of its employees committed in the scope of employment.  *Fisher v. San Pedro Peninsula Hosp.*,

7  214 Cal. App. 3d 590, 618 (1989).  Under California law, the test to determine whether an

8  employee's acts were committed during the scope of employment includes (1) whether the act was

9  either required by the employer or "incidental" to the employee's duties; and (2) whether the

10  employee's misconduct was reasonably foreseeable by the employer (even if not "required" or

11  "incidental").  *Yamaguchi v. Harnsmut*, 106 Cal. App. 4th 472, 481-82 (2003).

12          As to the first element – duty – Plaintiff alleges that Chevron employees, and therefore

13  Defendant under a theory of respondeat superior, owed him a duty to refrain from publishing false

14  statements that tend to injure another in his or her profession pursuant to California Civil Code

15  section 46.  However, section 46 relates to a cause of action for slander and provides as follows:

16          Slander is a false and unprivileged publication, orally uttered, . . .
                 which:

17

18          1. Charges any person with crime, or with having been indicted,
                 convicted, or punished for crime;

19          2. Imputes in him the present existence of an infectious, contagious, or
                 loathsome disease;

20

21          3. Tends directly to injure him in respect to his office, profession,
                 trade or business, either by imputing to him general disqualification in
                 those respects which the office or other occupation peculiarly requires,

22               or by imputing something with reference to his office, profession,
                 trade, or business that has a natural tendency to lessen its profits;

23

24          4. Imputes to him impotence or a want of chastity; or

25          5. Which, by natural consequence, causes actual damage.

26  Cal. Civ. Code §46.  As discussed below, Plaintiff has also brought a cause of action for slander.

27  Accordingly, to the extent that Plaintiff's cause of action for negligence is based on slander, it

28

                                        Page 10 of  25

1  should be viewed and analyzed as a single cause of action for slander.  *See Felton v. Schaeffer*, 229

2  Cal. App. 3d 229, 239 (1991) ("If plaintiffs . . . were permitted to sue in negligence, we perceive

3  plaintiffs would seek to evade the strictures of libel law and avoid the applicable defenses by

4  framing all libel actions as negligence causes of action, merely by pleading the defendant was

5  negligent.")

6  Accordingly, the Court finds that Defendant is entitled to judgment as a matter of law and hereby

7  GRANTS Defendant's motion as to this cause of action.

8  **C.**     **Intentional Interference with Contractual Relations**

9          Plaintiff's second cause of action is for intentional interference with contractual relations.

10  Plaintiff alleges that there was a contractual relationship between himself and Defendant containing

11  the probability of future economic benefit, and that unnamed Doe defendants undertook intentional

12  and unwarranted acts designed to disrupt the contractual relationship.  (Compl. ¶¶40-42, Dkt. #1.)

13  Plaintiff further alleges that Defendant is vicariously liable under a theory of respondeat superior.

14  (Compl. ¶44, Dkt. #1.)

15          Defendant argues that it is entitled to summary judgment on this claim because Plaintiff

16  either lacks evidence on necessary elements of the claim or has failed to come forward with

17  evidence sufficient to create a triable issue of fact.  In his opposition, Plaintiff does not respond to

18  Defendant's argument.

19          California courts have long held "that a stranger to a contract may be liable in tort for

20  intentionally interfering with the performance of a contract."  *Pac. Gas & Elec. Co. v. Bear Stearns*

21  *& Co.*, 50 Cal.3d 1118, 1126 (1990).  "The elements which a plaintiff must plead to state the cause

22  of action for intentional interference with contractual relations are (1) a valid contract between

23  plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts

24  designed to induce a breach or disruption of the contractual relationship; (4) actual breach or

25  disruption of the contractual relationship; and (5) resulting damage."  *Id.*

26          Here, the Court finds that Plaintiff has failed to set forth specific facts showing that there is a

27  genuine issue for trial.  First, he has failed to identify a relevant contract between himself and

28

UNITED STATES DISTRICT COURT
For the Northern District of California

Page 11 of  25

1    Chevron.  Second, even if he were able to identify a contract and the other elements of this cause of

2    action, he has not shown that Defendant can be held liable.  A cause of action for tortious

3    interference with contract will not lie against a party to the contract.  *Dryden v. Tri-Valley Growers*,

4    65 Cal. App. 3d 990, 999 (1977) ("It is obvious that if an action is brought for interference with

5    contractual relationship by one party to a contract against another who is also a party to that same

6    contract, the grievance of the plaintiff is, in essence, breach of contract; and, in such case, plaintiff is

7    entitled to recover all damages flowing from the breach. In such an instance to allow the plaintiff to

8    sue under the tort theory of wrongful interference with contractual rights would not only be

9    superfluous, but also would enable him to recover tort damages (e.g., punitive damages, damages for

10   mental suffering) to which he is not entitled under California law.").  Accordingly, Defendant is

11   entitled to judgment as a matter of law, and the Court hereby GRANTS Defendant's motion as to

12   this cause of action.

13   **D.      Negligent Interference with Contractual Relations**

14          In his third cause of action, Plaintiff asserts a claim for "negligent interference with

15   contractual relationships." (Compl. ¶¶46-52, Dkt. #1.)  However, California law does not recognize

16   a cause of action for negligent interference with contractual relations.  *Davis v. Nadrich*, 174 Cal.

17   App. 4th 1, 9 (2009).  Accordingly, the Court hereby GRANTS Defendant's motion as to this cause

18   of action.

19   **E.      Intentional Infliction of Emotional Distress**

20          Plaintiff's fourth cause of action is for intentional infliction of emotional distress.  Plaintiff

21   alleges that Chevron employees made false statements about him frequenting gentlemen's clubs and

22   brothels, with the specific intent to cause him emotional distress and with reckless disregard for the

23   truth, that the statements were extreme and outrageous, and that he suffered severe emotional

24   distress as a result of their conduct.  (Compl. ¶¶54-57, Dkt. #1.)  Plaintiff alleges that Chevron is

25   vicariously liable under a theory of respondeat superior.  (Compl. ¶58, Dkt. #1.)

26          In its motion, Defendant argues that Plaintiff cannot demonstrate the elements of this claim

27   because there is no outrageous conduct and no evidence of severe emotional distress.  (Def.'s Mot.

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

UNITED STATES DISTRICT COURT
For the Northern District of California

1    at 14:9-15:21, Dkt. #22.)  In response, Plaintiff argues that the comments made by various Chevron

2    employees were deliberate and malicious, and they intentionally cost him his job.  (Pl.'s Opp'n at

3    13:7-11, Dkt. #28.)  As such, Plaintiff maintains that their conduct was malicious, oppressive, and

4    outrageous.  (Pl.'s Opp'n at 13:12, Dkt. #28.)  Plaintiff further argues that the severity of his

5    emotional distress is a jury question and should not be decided at the summary judgment phase.

6    (Pl.'s Opp'n at 13:13-22, Dkt. #28.)

7        The elements of the tort of intentional infliction of emotional distress are: "(1) extreme and

8    outrageous conduct by the defendant with the intention of causing, or reckless disregard of the

9    probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional

10   distress; and (3) actual and proximate causation of the emotional distress by the defendant's

11   outrageous conduct." *Christensen v. Superior Court*, 54 Cal.3d 868, 903 (1991).  For conduct to be

12   outrageous, it must "be so extreme as to exceed all bounds of that usually tolerated in a civilized

13   community." *Id.*

14       Here, as to the first element, Defendant asserts that "[t]he core of Plaintiff's complaint - that

15   Chevron's conclusions about his misconduct was [sic] overblown, and that his employment was

16   terminated as a result - is not 'so severe that no reasonable man could be expected to endure it.'"

17   (Def.'s Mot. at 15:3-7, Dkt. #22) (quoting *Pitman v. City of Oakland*, 197 Cal. App. 3d 1037, 1047

18   (1988)).  Plaintiff, however, argues that Tim Black "deliberately and maliciously [told] Chevron

19   officials . . . that he was frequenting brothels with clients.  In other words, this case involves

20   someone intentionally costing [Plaintiff] his job, for which he had worked his entire career, for

21   reasons that were simply made up.  To put it simply, this is conduct that should not be tolerated by

22   decent citizens."  (Pl.'s Opp'n at 13:7-12, Dkt. #28.)

23       For conduct to be considered outrageous, "it must be so extreme as to exceed all bounds of

24   that usually tolerated in a civilized community."  *Yurick v. Super. Ct.*, 209 Cal. App. 3d 1116, 1123

25   (1989) (internal quotations and citations omitted).  Here, it is undisputed that Tim Black told

26   Chevron officials that Plaintiff had "frequented" gentlemen's clubs and "brothels," and that he made

27   those allegations against Plaintiff during his participation in the official investigation (JSOF ¶38,

28

1   Dkt. #26.)  It is also undisputed that Tim Black admitted that his allegations were wrong, that he

2   knew they were wrong, and that he made the allegations in reckless disregard for Plaintiff's rights.

3   (JSOF ¶42, Dkt. #26.)  However, Plaintiff himself admits that he accompanied clients to gentlemen's

4   clubs on approximately five occasions over several years when clients brought him there.  (JSOF

5   ¶41, Dkt. #26.)  It is hard to imagine how Black's statement, while knowingly false, can be

6   considered so extreme "as to exceed all bounds of that usually tolerated in a civilized community"

7   when Plaintiff himself admits that he did, in fact, attend gentlemen's clubs, and that his clients

8   "often would ask to go to gentlemen's clubs, and he accommodated such requests and accompanied

9   clients to gentlemen's clubs," even purchasing "lap dances" for himself.  (Pl.'s Opp'n at 1:4-7, Dkt.

10  #28; Pope Decl., Ex. A 133:12-135:4, Dkt. #23.)  Given these undisputed facts, a reasonable fact-

11  finder could not find that the alleged conduct is outrageous.

12          Even if the Court were to find that a genuine issue of material fact exists as to whether the

13  conduct was outrageous, Plaintiff has failed to meet his burden of establishing severe emotional

14  distress.  Severe emotional distress is described as "emotional distress of such substantial quantity or

15  enduring quality that no reasonable man in a civilized society should be expected to endure it."

16  *Simo v. Union of Needletrades Indus. & Textile Emp.*, 322 F.3d 602, 622 (9th Cir. 2003) (quoting

17  *Kiseskey v. Carpenters' Trust for So. Cal.*, 144 Cal. App. 3d 222, 231 (1983)).  Claiming to be tense,

18  nervous, and emotionally hurt does not satisfy this standard.  *Id.*  Allegations of severe distress may

19  also fail when they lack any evidentiary support from medical professionals.  *Love v. Motion Indus.,*

20  *Inc.*,

21  309 F. Supp. 2d 1128, 1137 (2004) (citing *Lappin v. Laidlaw Transit Inc.*, 179 F. Supp. 2d 1111,

22  1126-27 (2001)).  Here, Plaintiff fails to point to any evidence of severe emotional distress.  In his

23  opposition, he states that the severity of his distress is a jury question and that Defendant "greatly

24  minimized" his distress in its motion.  (Pl.'s Opp'n at 13:13-20, Dkt. #28.)  These generalized

25  statements do not suffice at the summary judgment phase.  Plaintiff must "identify with reasonable

26  particularity the evidence that precludes summary judgment."  *Keenan*, 91 F.3d at 1279.  In fact, the

27  available evidence tends to show the opposite is true.  During his deposition, Plaintiff could identify

28

1    no prospective employment that he has been unable to obtain due to Defendant allegedly disclosing

2    that he was no longer with the company, and he could identify no other damages allegedly flowing

3    from any such disclosure.  (JSOF ¶48, Dkt. #26.)  In fact, approximately 1½ months after his

4    termination, Plaintiff obtained other employment with British Petroleum.  (JSOF ¶46, Dkt. #26.)  As

5    Plaintiff has failed to establish his emotional distress with such particularity as is required,

6    Defendant is entitled to judgment as a matter of law on this claim.  And, because Plaintiff has failed

7    to establish this cause of action against any individual, Defendant cannot be held liable under the

8    doctrine of respondeat superior.  Defendant's motion is therefore GRANTED as to this cause of

9    action.

10   **F.      Negligent Infliction of Emotional Distress**

11          Plaintiff's fifth cause of action is for negligent infliction of emotional distress.  Plaintiff

12   alleges that Chevron employees breached the duty of care owed to him when they made the false

13   statements regarding his frequenting gentlemen's clubs and brothels, they made the statements with

14   reckless disregard for the truth, and as a result of the statements, he suffered severe emotional

15   distress and physical illness.  (Compl. ¶¶60-65, Dkt. #1.)  Plaintiff further alleges that Defendant is

16   vicariously liable for their actions under a respondeat superior theory.  (Compl. ¶65, Dkt. #1.)

17   However, to the extent that plaintiff might seek to proceed upon a claim regarding negligent

18   infliction of emotional distress, under California state law, there is no independent tort of negligent

19   infliction of emotional distress.  *Mitchell v. Adams*, 2010 WL 2976073, at *31 (E.D. Cal. 2010)

20   (citing *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 984 (1993)).  Instead, the cause of

21   action is more properly considered as a general negligence claim.  *Potter*, 6 Cal.4th at 984.  And, as

22   discussed above, Plaintiff's negligence claim is more properly analyzed below as a claim for slander.

23   Accordingly, Defendant is entitled to judgment as a matter of law, and the Court hereby GRANTS

24   Defendant's motion as to this cause of action.

25   **G.      Slander and Libel**

26          The core causes of action in Plaintiff's lawsuit are his defamation claims against Chevron.

27   Plaintiff's Complaint does not identify the alleged defamatory statements with much specificity

28

UNITED STATES DISTRICT COURT
For the Northern District of California

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1    other than indicating that the statements occurred during the course of Chevron's investigation into

2    Plaintiff's conduct as sales manager and the statements "accused [Plaintiff] of frequenting 'brothels'

3    with clients, and other scandalous activity that a reasonable person and ordinary member of the

4    community would find disreputable." (Compl. ¶68, Dkt. #1.)  Reviewing the parties' briefs, the

5    statements giving rise to Plaintiff's defamation claims are somewhat of a moving target.

6        Initially in its Motion, Chevron moves for summary judgment on Plaintiff's slander and libel

7    claims based on three categories of statements: (1) the statements in Ms. Taylor's investigative

8    report; (2) a communication by Chevron manager Keith Sawyer to Chevron's dealers and

9    distributors with which Plaintiff had been a key Chevron contact; and (3) statements made by Tim

10   Black to Ed Zwirn, the CEO and minority shareholder of SheltAir Aviation, a former Chevron

11   customer.  (Def.'s Mot. at 16:5-18:23.)  However, in his opposition, Plaintiff identifies only two

12   categories of statements on which he bases his claims: (1) Tim Black's statements to the internal

13   investigators that Plaintiff frequented gentlemen's clubs and brothels; and (2) Tim Black and other

14   Chevron employees' statement to Ed Zwirn that Plaintiff had been terminated from Chevron because

15   he went to gentlemen's clubs and brothels.  (JSOF ¶ 45, Dkt. #26; Pl.'s Opp'n at 7:18-21, Dkt. #28.)

16   Accordingly, in its Reply, Chevron focuses its argument specifically on these two categories of

17   allegedly defamatory statements.  The Court therefore will assess whether Plaintiff has presented

18   sufficient evidence to withstand summary judgment on the two categories of statements he has

19   identified.

20        1.    Plaintiff's Slander Claim

21        In his sixth cause of action, Plaintiff asserts a claim for slander.  He contends that "during

22   and after [his] employment with Chevron, defendants made false statements to industry clients that

23   [Plaintiff] 'frequented strip clubs and brothels' with clients."  (Pl.'s Opp'n at 1:16-18, Dkt. #28.)

24        In California, to state a prima facie case of slander, a plaintiff must show an intentional

25   publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or

26   which causes special damage.  *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645 (1999).  A statement

27   that falls within one of the first four categories of California Civil Code section 46 constitutes

28

Page 16 of  25

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1  slander per se and does not require proof of actual damages.  *Regalia v. Nethercutt Collection*, 172

2  Cal. App. 4th 361, 367 (2009).  Section 46(3) of the California Civil Code describes statements that:

> Tend[] directly to injure him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits[.]

6  Cal. Civ. Code §46(3). Plaintiff contends that Mr. Black's statements to Chevron investigators, and

7  Mr. Black and unidentified other Chevron employees' statement(s) to Ed Zwirn that Plaintiff

8  "frequents brothels with clients," qualify as slander per se under section 46(3).  (Pl.'s Opp'n at 6:5-

9  9., Dkt. #28)

10      The Court now turns to Defendant's specific challenges to Plaintiff's slander claim.

11          *a.      Statement by Mr. Black During Chevron Internal Investigation*

12      The first basis for Plaintiff's slander claim is Mr. Black's statement during an internal

13  company investigation that Plaintiff had "frequented" gentlemen's clubs and "brothels" with clients.

14  (JSOF ¶38, Dkt. #26.)  Defendant contends that it is entitled to summary judgment on Plaintiff's

15  slander claim premised on this statement because (1) there was no publication of the statement to a

16  third party, and (2) the statement was protected under the common interest privilege.

17              *i.      Publication*

18      In its Reply, Defendant argues that "if Black's statement is attributable to Chevron, then the

19  effect of such attribution is that Chevron was making a slanderous statement to itself."  (Def.'s

20  Reply at 5:1-3, Dkt. #33.)  Defendant thus asserts that Plaintiff's claim fails as a matter of law

21  because there was no publication of the defamatory statement to a third party.  (Def.'s Reply at 5:3-

22  10, Dkt. #33.)

23      In California, internal corporate statements about an employee may be considered

24  "published" for purposes of a slander claim.  *Kelly v. Gen. Tel. Co.*, 136 Cal. App. 3d 278, 284

25  (1982).  In *Kelly*, the plaintiff sued his former employer, alleging that his supervisor had made

26  statements to the company's managing agent that the plaintiff had misused company funds by

27  buying materials without proper authorization and that plaintiff had falsified invoices.  *Id.* at 284.

28

The plaintiff alleged that the statements were repeated to other employees within the company, including employees in the personnel office. *Id.* The defendant company moved to dismiss the plaintiff's slander claim, arguing that plaintiff had failed to allege publication by only alleging that the statements were made by one of the defendant's employees to other employees within the company. *Id.* The California Court of Appeal found the defendant-company's argument "without merit as publication occurs when a statement is communicated to any person other than the party defamed." *Id* (citations omitted); *see also Agarwal v. Johnson*, 25 Cal. 3d 932, 944 (1979) (rev'd on other grounds). Here, Mr. Black made the statement regarding Plaintiff frequenting gentlemen's clubs and brothels with clients to Ms. Taylor. Thus, under *Kelly*, Mr. Black's statement to the Chevron investigators is sufficient evidence of publication to satisfy this element of his slander claim. Chevron's challenge on this basis therefore fails.

*ii.      Statement of Fact that is False*

As to whether the statement is false, Black has admitted that his allegations that Plaintiff frequented gentlemen's clubs and brothels were wrong, that he knew they were wrong, and that he made the allegations in reckless disregard for Plaintiff's rights. (JSOF ¶42, Dkt. #26.) Accordingly, Plaintiff also satisfies this element of his slander claim.

*iii.      Unprivileged*

Defendant contends that the common interest privilege under California Civil Code section 47(c) applies to Mr. Black's statement made during Chevron's internal investigation. (Def.'s Mot. at 17:3-17.) Plaintiff, however, counters that the qualified privilege is inapplicable because Mr. Black made the statement with malice. (Pl.'s Opp'n at 7:9-8:7.)

"California law recognizes two types of privileged communications – communications which are absolutely privileged and communications which are qualifiedly or conditionally privileged. If absolutely privileged, there is no liability even if the defamatory communication is made with actual malice. If the privilege is only conditional or qualified, a finding of malice will prevent the communication from being found privileged." *Kashian v. Harriman*, 98 Cal. App. 4th 892, 912 (2002) (quoting *Cruey v. Gannett Co.,* 64 Cal. App. 4th 356, 367 (1998). Here, Defendant argues

Page 18 of  25

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1   that the common interest privilege, codified in California Civil Code section 47(c), applies.  This

2   section makes privileged a publication made:

3           In a communication, without malice, to a person interested therein, (1)
        by one who is also interested, or (2) by one who stands in such a
4       relation to the person interested as to afford a reasonable ground for
        supposing the motive for the communication to be innocent, or (3)
5       who is requested by the person interested to give the information.
    .
6   This privilege is conditional in that, if it is shown that the statement was made with malice, the

7   privilege never arises.  *Kashian*, 98 Cal. App. 4th at 914-15.  The California Supreme Court has

8   stated that "[t]he malice referred to by the statute is actual malice or malice in fact, that is, a state of

9   mind arising from hatred or ill will, evidencing a willingness to vex, annoy or injure another

10  person."  *Agarwal*, 25 Cal.3d at 944.  However, malice may also be established by showing that the

11  defendant lacked reasonable grounds to believe the statement true and therefore acted with reckless

12  disregard for plaintiff's rights.  *Sanborn v. Chronicle Pub. Co.*, 18 Cal.3d 406, 413 (1976); *Cuenca*

13  *v. Safeway San Francisco Employees Fed. Credit Union*, 180 Cal. App.3d 985, 997 (1986).

14  Negligence on the part of the speaker is not tantamount to malice.  *Cabanas v. Gloodt Assocs.*, 942

15  F. Supp. 1295, 1301 (E.D. Cal. 1996).  Thus, in demonstrating reckless disregard, it is not sufficient

16  that the statements are shown to be inaccurate, or even unreasonable.  *Id.*  "It is only when the

17  negligence amounts to a reckless or wanton disregard for the truth, so as to reasonably imply a

18  wilful disregard for or avoidance of accuracy, that malice is shown."  *Id.* at 1301-02 (quoting

19  *Roemer v. Retail Credit Co.* 3 Cal. App. 3d 368, 372 (1970).)  Thus, in demonstrating reckless

20  disregard, it is not sufficient that the statements are shown to be inaccurate, or even unreasonable.

21  *Id.* at 1301.  "Only willful falsity or recklessness will suffice."  *Id.*

22          In support of his assertion that Mr. Black made the statement to Chevron investigators with

23  malice, Plaintiff proffers the following statements in Mr. Black's Declaration:

24          10.     On or about August 2007, I was interviewed by Chevron
                investigators ("Investigators") regarding my conduct and Mr.
25              Duste's conduct with regard to the May 2005 trip to San
                Maarten.
26
27          11.     During said interview, I spoke with the Investigators about the
                Bar we visited on or about May 4, 2005 with the Chevron
                employees and customers.  During my discussion, I incorrectly
28

Page 19 of  25

referred to the Bar as a "brothel."  Although I did not believe the bar to be a "brothel," I said it was anyway.  I made this statement in reckless disregard of Mr. Duste's rights.

12.   I was aware at all times that visiting brothels would be contrary to Chevron's policies for employees.

13.   I was aware during the August 2007 interview that admitting to Investigators that an employee, or myself, who visited a brothel could be subject to disciplinary action and possibly have their employment terminated.

14.   At the time I spoke with the Investigators, I was aware that the Bar was not a brothel, and that referring to it as a brothel would be incorrect.

(Black Decl. ¶¶10-14, Dkt. #31.)  Based on these statements, there is evidence that Mr. Black stated that Plaintiff had visited a brothel during his business trip to San Maarten, knowing that such statement was inaccurate and that it violated Chevron's policies and exposed Plaintiff to possible disciplinary measures.  Accordingly, the Court finds that Plaintiff has proffered sufficient evidence to create a triable issue of material fact as to whether Mr. Black made the statements to Chevron's investigators with malice.  Chevron is therefore not entitled to summary judgment based on a common interest privilege under California Civil Code 47(c).

iv.    *Effect of the Statement*

With respect to the final element – the statement has a natural tendency to injure or causes special damage – the Court finds that genuine issues of fact exist.  Plaintiff asserts that Mr. Black's statement falls within the scope of California Civil Code section 46(3) because it tended to injure him in respect to his profession and trade.  In support, Plaintiff proffers that the statement was one of the bases for his termination, and that "spreading those statements through the rest of the industry will only hurt [him] further."  (Pl.'s Opp'n at 6:10-13, Dkt. #28.).  The Court agrees with Plaintiff that the substance of the statement is sufficient to create a triable issue of fact as to whether it was such that it injured him in respect to his profession and trade, which is sufficient to establish slander per se under section 46(3) and does not require proof of actual damages.  Accordingly, Chevron is not entitled to summary judgment on this issue.

b.    *Respondeat Superior*

Page 20 of  25

1    Based on the analysis above, the Court finds that Plaintiff has set forth specific facts showing

2   that there is a genuine issue for trial regarding his claim for slander related to Mr. Black's statement

3   during the internal investigation.  However, Tim Black is not a defendant in this case; thus, in order

4   to maintain his cause of action against Chevron, Plaintiff must establish that Chevron is liable under

5   a theory of respondeat superior.

6    Under the doctrine of respondeat superior, an employer is vicariously liable for the torts of

7   its employees committed within the scope of the employment.  *Lisa M. v. Henry Mayo Newhall*

8   *Mem. Hosp.*, 12 Cal.4th 291, 296 (1995) (citing *Perez v. Van Groningen & Sons, Inc.*, 41 Cal.3d

9   962, 967 (1986)).  Further, "an employee's willful, malicious and even criminal torts may fall within

10  the scope of his or her employment for purposes of respondeat superior, even though the employer

11  has not authorized the employee to commit crimes or intentional torts."  *Id.* at 296-97 (citations

12  omitted).  However, an employer will not be held liable for an intentional tort that did not have a

13  causal nexus to the employee's work."  *Id.* at 297.  "That the employment brought tortfeasor and

14  victim together in time and place is not enough."  *Id.* at 298.  Thus, "the tortious occurrence must be

15  a generally foreseeable consequence of the activity," meaning that "in the context of the particular

16  enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include

17  the loss resulting from it among other costs of the employer's business."  *Id.* at 299 (internal

18  quotations and citations omitted).

19   If the employee inflicts an injury out of personal malice, the employee is not acting within

20  the scope of employment.  *Myers v. Trendwest Resorts, Inc.*, 148 Cal. App. 4th 1403, 1429 (2007)

21  (internal quotations and citation omitted).  Thus, if an employee's tort is personal in nature, "mere

22  presence at the place of employment and attendance to occupational duties prior or subsequent to the

23  offense will not give rise to a cause of action against the employer under the doctrine of respondeat

24  superior.  . . .  In such cases, the losses do not foreseeably result from the conduct of the employer's

25  enterprise and so are not fairly attributable to the employer as a cost of doing business."  *Id.* (internal

26  quotations and citation omitted).  "Ordinarily, the determination whether an employee has acted

27  within the scope of employment presents a question of fact; it becomes a question of law, however,

28

**United States District Court**
**For the Northern District of California**

1   when the facts are undisputed and no conflicting inferences are possible." *Lisa M.*, 12 Cal.4th at 299

2   (internal quotations and citation omitted).

3        In his opposition, Plaintiff argues that Tim Black's statements to Chevron investigators were

4   "within a causal nexus of his employment with Chevron" because, "[h]ad Mr. Black not been

5   employed by Chevron, he never would have participated in the investigation, and, by axiom, he

6   never would have made the statements." (Pl.'s Opp'n at 9:27-10:2, Dkt. #28.)   However, as stated

7   above, it is not enough that the employment brought tortfeasor and victim together in time and place.

8    *Lisa M.*,12 Cal.4th at 298.   Plaintiff must establish that Black's statement is a generally foreseeable

9   consequence of the employment. *Id.* at 299.   Applying these principles, the Court finds that a

10  question of fact exists on this issue.   As stated above, Defendant can be held liable for Black's

11  willful and malicious torts, even if it did not authorize the statement. *Id.* at 296-97.

12       In its reply, Defendant cites to several authorities in support of its argument that Black's

13  statement had no causal nexus to his employment. In *Delfino v. Agilent Technologies, Inc.*, 145 Cal.

14  App. 4th 790, 813-14 (2007), the court found that the employer could not be held liable when its

15  employee used the employer's computing system to send out threats over the internet.   In *Lisa M.*,

16  the court found no employer liability for sexual assault on a patient by a medical technician.   12

17  Cal.4th at 297-99.   In *Borg-Warner Protective Services Corp. v. Super. Ct.*, 75 Cal. App. 4th 1203,

18  1205 (1999), the court found no employer liability for arson committed by one of the plaintiff's

19  employees.   However, the Court finds that these cases are all distinguishable in that the employees

20  were clearly acting outside the scope of their employment.   Here, Tim Black made the false

21  statement within the scope of an internal Chevron investigation related to Plaintiff.   While it makes

22  no finding as to whether this satisfies the causal nexus required to establish Defendant's liability, the

23  Court recognizes that conflicting inferences are possible in making this determination, making it a

24  question of fact that is not appropriately resolved at the summary judgment phase. *Lisa* M., 12

25  Cal.4th at 299.   Accordingly, the Court hereby DENIES Defendant's motion as to this cause of

26  action.

27            c.    *Statement to Mr. Black and Unidentified Other Chevron Employees' to Ed
                    Zwirn*

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1

2       Plaintiff also alleges slander related to Tim Black and other Chevron employees' statement

3   to Ed Zwirn that Plaintiff had been terminated from Chevron because he frequented gentlemen's

4   clubs and brothels.  (Pl.'s Opp'n at 7:18-21, Dkt. #28.)  For the same reasons stated above, the Court

5   finds that Plaintiff has shown there are genuine issues of fact related to this statement, making

6   summary judgment inappropriate.  Accordingly, the Court hereby DENIES Defendant's motion as to

7   this cause of action.

8           2.      Plaintiff's Libel Claim

9       Plaintiff's seventh cause of action is for libel.  Based on the same statements as in his slander

10  cause of action, Plaintiff alleges that "during the investigation into [Plaintiff's] alleged conduct,

11  written questions and written responses were made, and the investigation conducted in bad faith, and

12  made for the sole purpose of originating a method to terminate [him] from Chevron with any means

13  available."  (Compl. ¶78, Dkt. #1.)  However, Plaintiff fails to address this cause of action in his

14  opposition; thus, because Plaintiff has failed to go beyond the pleadings and by his own evidence set

15  forth specific facts showing that there is a genuine issue for trial, the Court finds that Defendant is

16  entitled to judgment as a matter of law.  Accordingly, the Court hereby GRANTS Defendant's

17  motion as to this cause of action.

18  **H.      Breach of Contract**

19      Plaintiff's eighth cause of action is for breach of contract.  He alleges that a valid contract

20  existed between himself and Defendant, and that Defendant breached the contract when it

21  negligently terminated him.  (Compl. ¶¶84-86, Dkt. #1.)  In its motion, Defendant argues that

22  Plaintiff understood that his employment was terminable "at will" and that he testified in his

23  deposition that it had violated no policies or procedures in connection with his termination.  (Def.'s

24  Mot. at 20:10-13, Dkt. #22.)  As such, Defendant maintains that Plaintiff cannot assert a claim for

25  breach of contract.  Plaintiff does not address Defendant's arguments in his opposition.  Given that

26  Plaintiff testified that he did not believe that his termination violated any company policies or

27  procedures, (JSOF ¶51, Dkt. #26), and that his employment was terminable "at will," (JSOF ¶50,

28

1   Dkt. #26), the Court finds that Plaintiff has failed to set forth specific facts showing that there is a

2   genuine issue for trial.  Accordingly, Defendant is entitled to judgment as a matter of law, and the

3   Court hereby GRANTS Defendant's motion as to this cause of action.

4   **I.      California Business & Professions Code Section 17200**

5            In his final cause of action, Plaintiff alleges that Defendant engaged in unfair business

6   competition in violation of California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code §

7   17200, *et seq.*  Specifically, Plaintiff alleges that Chevron employees made false allegations against

8   him as a "fictitious means" to end his employment with Chevron.  (Compl. ¶¶89-90, Dkt. #1.)

9            In its motion, Defendant argues three reasons why Plaintiff cannot assert a claim under the

10  UCL: (1) his remedies are limited to injunctive relief and restitution, and he seeks neither; (2) he

11  cannot bootstrap a cause of action for violation of the UCL to his tort claims; and (3) he cannot

12  establish that Defendant engaged in unlawful, unfair or fraudulent business practices in violation of

13  the UCL.  (Def.'s Mot. at 20:17-21:20, Dkt. #22.)  In his opposition, Plaintiff fails to address any of

14  Defendant's arguments.

15           To state a claim for unfair business practices and competition pursuant to the UCL, a plaintiff

16  can allege an unlawful, unfair, or fraudulent business act or practice.  *Kasky v.. Nike, Inc.*, 27 Cal.4th

17  939, 949 (2002).  The UCL defines "unfair competition" to mean and include "any unlawful, unfair

18  or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any

19  act prohibited by [the false advertising law (§ 17500 et seq.) ]."  Cal. Bus. & Prof. Code § 17200.

20  The UCL's purpose is to protect both consumers and competitors by promoting fair competition in

21  commercial markets for goods and services.  *Kasky*, 27 Cal.4th at 949 (citing *Barquis v. Merchants*

22  *Collection Assn.*, 7 Cal.3d 94, 110 (1972).  Under the UCL, a private plaintiff's remedies are limited

23  to injunctive relief and restitution.  *Id.* at 950.

24           Here, the Court finds that Plaintiff has failed to identify with reasonable particularity the

25  evidence that precludes summary judgment on this claim.  In fact, beyond the vague allegations in

26  his complaint, Plaintiff has set out no specific facts showing that Defendant is liable under the UCL.

27  Thus, the Court finds that Defendant is entitled to judgment as a matter of law and hereby GRANTS

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

Page 24 of  25

UNITED STATES DISTRICT COURT
For the Northern District of California

Defendant's motion as to this cause of action.

## IV.   CONCLUSION

Based on the analysis above, the Court hereby ORDERS as follows:

1)   The Court GRANTS Defendant's motion for summary judgment as to Plaintiff's claims for negligence, intentional interference with contractual relationships, negligent interference with contractual relationships, intentional infliction of emotional distress, negligent infliction of emotional distress, libel, breach of contract, and violation of California Business & Professions Code section 17200, *et seq.*

2)   The Court DENIES Defendant's motion for summary judgment as to Plaintiff's claim for slander.

**IT IS SO ORDERED.**

Dated: September 2, 2010

_____
Maria-Elena James
Chief United States Magistrate Judge