UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| RICHARD A DUSTE,<br><br>                Plaintiff,<br>   v.<br>CHEVRON PRODUCTS COMPANY,<br>                Defendant.<br>_____/ | No. C 08-3980 MEJ<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>**Re: Docket No. 96** |

      Pending before the Court is Defendant Chevron U.S.A. Inc.'s Motion for Judgment as a Matter of Law ("JMOL"); or, in the Alternative, Motion for a New Trial. Dkt. No. 96. Plaintiff Richard Duste has filed an Opposition (Dkt. No. 99), to which Chevron filed a Reply (Dkt. No. 101). Pursuant to Civil Local Rule 7-1(b), the Court finds this matter suitable for disposition without oral argument and hereby VACATES the January 12, 2012 hearing. After consideration of the parties' briefs, relevant legal authority, and good cause appearing, the Court **GRANTS** Chevron's Motion as follows.

## I. BACKGROUND

      The factual background of this case is presented in the Court's September 2, 2010 *Order re: Defendant's Motion for Summary Judgment* ("SJ Order"). Dkt. No. 36 at 1-6. Accordingly, the Court shall address specific facts only as they are relevant to the instant motion. On August 20, 2008, Duste filed a Complaint, alleging nine causes of action: (1) negligence; (2) intentional interference with contractual relationships; (3) negligent interference with contractual relationships;

(4) intentional infliction of emotional distress; (5) negligent infliction of emotional distress; (6) slander; (7) libel; (8) breach of contract; and (9) unfair business practices under California Business & Professions Code section 17200, *et seq.* Dkt. No. 1. Chevron subsequently filed a Motion for Summary Judgment. Dkt. No. 22. Following the Court's ruling on Chevron's motion on September 2, 2010, the sole issue remaining for trial was Duste's claim for slander (sixth cause of action). Dkt. No. 36.

In his slander cause of action, Duste claimed that two statements made by Chevron employee Tim Black were defamatory and attributable to Chevron. The first basis for Plaintiff's slander claim was Black's statement during an internal company investigation that Plaintiff had "frequented" gentlemen's clubs and "brothels" with clients. Joint Statement of Undisputed Facts ("JSF") ¶ 38, Dkt. No. 26. The second basis was Black's statement to third party Ed Zwirn that Plaintiff had been terminated from Chevron because he went to gentlemen's clubs and brothels. JSF ¶ 45. Chevron contended that any such statements made by Black were either privileged or substantially true, and that, in any event, Chevron was not liable, either directly or vicariously, for any such statements as a matter of law. SJ Order at 16-23. Chevron also contended that Plaintiff could not establish the requisite elements of his slander claim, including damages. *Id.*

During trial, after the parties presented their respective witnesses, Chevron made a motion for JMOL pursuant to Federal Rule of Civil Procedure ("Rule") 50(a). Tr. at 622:2-644:20, Pope Decl. Ex. A, Dkt. No. 97. Chevron argued that no reasonable jury would have a sufficient legal basis to find for Duste on his claims of slander because there was insufficient evidence: (1) to proceed under a theory of slander per se; (2) to demonstrate that the second statement was not substantially true; (3) to demonstrate that the second statement was made within the scope of Black's employment with Chevron; (4) to demonstrate actual damages attributable to the second statement; and (5) to demonstrate that Zwirn understood the second statement to be defamatory. *Id.* The Court granted the JMOL in part, ruling that both statements were properly characterized as slander per quod – not slander per se. Dkt. No. 74; Tr. at 652:17-20. The Court denied Chevron's motion at that juncture of the case in all other respects. Dkt. No. 74.

At the conclusion of the trial, the jury returned a verdict on October 7, 2011 in favor of Chevron and against Duste with respect to the first statement during the internal company investigation. Dkt. No. 80. The jury returned a verdict in favor of Duste and against Chevron with respect to the second statement to Zwirn, awarding Duste $49,125 for harm to his reputation, and $49,125 for shame, mortification, or hurt feelings. *Id.* Chevron subsequently filed the present JMOL.

## II. DISCUSSION

In its motion, Chevron argues that the jury was influenced by sympathy, rather than evidence, in making an award to Duste. Def.'s Mot. at 3. Specifically, Chevron argues that the evidentiary record at trial does not establish the following requisite elements for Duste's slander claim: (1) there are no actual damages shown to be attributable to the statement; (2) the third party to whom the statement was made (Zwirn) did not understand the statement to be defamatory; and (3) there is insufficient evidence to establish respondeat superior liability against Chevron for Black's statement to Zwirn. *Id.* at 1. Absent such evidence as to any one of these three elements, Chevron contends that Duste failed to carry his burden of proof, and the jury's verdict is therefore insupportable. *Id.*

Chevron's motion is also made on the independent ground that the damages awarded to Plaintiff were excessive. *Id.* In the alternative Chevron moves for a new trial pursuant to Rule 59(a) on the foregoing limited issues. *Id.*

In response, Duste argues that he submitted evidence of damages in that he suffered anger, sadness, a diminished reputation, and lost job opportunities. Pl.'s Opp'n at 2. Duste further argues that Zwirn testified that the statement was defamatory, and he also testified that most people in the industry would be offended by taking clients to strip clubs, let alone brothels, which is prima facie evidence that even telling people that "plaintiff took clients to strip clubs" was defamatory. *Id.* Finally, while Chevron asserts that there was insufficient evidence that Tim Black was acting within the "scope of his employment" when he made the defamatory statements, Duste contends that this argument is beside the point because the correct standard is whether Black's conduct bore a "causal

Page 3 of 13

nexus" with his employment, not whether he was technically acting within the course and scope of his employment. *Id.*

**A.     Legal Standard**

      1.     <u>Judgment as a Matter of Law</u>

Under Rule 50(a), a party may bring a motion for judgment as a matter of law prior to the case being submitted to the jury. The court may grant the JMOL motion "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue" and the claim can be defeated with a favorable finding on that issue. Fed. R. Civ. P. 50(a). If the court does not grant a pre-verdict JMOL motion, the movant may file a renewed motion for judgment as a matter of law after the verdict, and may include an alternative request for a new trial under Rule 59. Fed. R. Civ. P. 50(b). A party cannot raise arguments in its post-trial Rule 50(b) motion that it did not raise beforehand in a Rule 50(a) motion offered during trial itself. *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003). When granting a post-verdict JMOL motion, the court must also conditionally rule on any motion for a new trial by determining whether a new trial should be granted if the judgment is later vacated or reversed. Fed. R. Civ. P. 50(c).

In the Ninth Circuit, judgment as a matter of law pursuant to Rule 50(b) is appropriate when the evidence permits only one reasonable conclusion, and that conclusion is contrary to that of the jury. *Martin v. Cal. Dept. of Veterans Affairs*, 560 F.3d 1042, 1046 (9th Cir. 2009); *Josephs v. Pacific Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006). All evidence must be viewed in the light most favorable to the nonmoving party, and the court must draw all reasonable inferences in that party's favor. *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009); *Martin*, 560 F.3d at 1046; *Josephs*, 443 F.3d at 1062. "[I]n entertaining a motion for judgment as a matter of law, the court . . . may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000); *Go Daddy Software*, 581 F.3d at 961.

      2.     <u>Motion for a New Trial</u>

A new trial may be granted if the verdict is not supported by the evidence. *Monolithic*

Page 4 of 13

*Power Systems, Inc. v. O2 Micro Intern. Ltd.*, 2007 WL 3231709, at *1 (N.D. Cal. 2007). While there is no easily articulated formula for evaluating such motions, probably the best that can be said is that the court should grant the motion "[i]f, having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Landes Constr. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371-72 (9th Cir. 1987) (quoting 11 Wright & Miller, Fed. Prac. & Proc. § 2806, at 48-49).

The Ninth Circuit has found that the existence of substantial evidence does not prevent the court from granting a new trial if the verdict is against the clear weight of the evidence. *Id.* at 1371. "The judge can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party." *Id.* Therefore, the standard for evaluating the sufficiency of the evidence is less stringent than that governing the Rule 50(b) motions for judgment as a matter of law after the verdict. *Monolithic Power*, 2007 WL 3231709, at *2.

**B.      Application to the Case at Bar**

Because the Court finds the JMOL issue dispositive, it turns to it first. Chevron raises three arguments, which the Court shall consider in turn: (1) whether there are actual economic damages shown to be attributable to the statement; (2) whether Zwirn understood the statement to be defamatory; and (3) whether Black was acting as Chevron's agent when he made the statement.

1.      <u>Whether there are actual economic damages attributable to the statement</u>

As noted above, the Court held as a matter of law during trial that Duste's statement to Ed Zwirn fell into the category of slander per quod under California law, not slander per se.[1] As such,

---

[1] The California Code of Civil Procedure defines slander per se, in pertinent part, as "a statement that charges any person with crime, . . . [or] tends directly to injure him in respect to his office, profession, trade or business, either by imputing to him general disqualifications in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits; . . . ." Cal. Civ. Code § 46. Thus, a statement is slander per se if it charges a person with crime or directly injures a person's professional reputation. In addition, charging a person with some general undesirable characteristic is not actionable as slander per se if it does not directly "touch the plaintiff

damages are not presumed; instead, to carry his burden of proof, a plaintiff must prove the existence of actual damages that were caused by the alleged slander at issue. *Regalia*, 172 Cal. App. 4th at 367; *Mann v. Quality Old Time Serv., Inc.*, 120 Cal. App. 4th 90, 106-07 (2004) (holding that a plaintiff must prove special damages for a slander claim, unless the plaintiff proves slander per se); *Correia v. Santos*, 191 Cal. App. 2d 844, 852 (1961) ("The effect of the distinction between libel and slander . . . is observed primarily in determinations as to whether particular language is actionable per se or requires the pleading of special damages . . ."); Restatement 2d Torts § 621 and comment ("[o]ne who is liable for a defamatory communication is liable for the proved, actual harm caused to the reputation of the person defamed" – but only if the slander constitutes slander per se or "or if the requisite special harm is proved to exist.").

"Special harm" is not an amorphous concept; it requires "the loss of something having economic or pecuniary value." Restatement 2d Torts § 621, comm. a., § 575, comm. b. More specifically, "[l]oss of reputation alone is not enough to make the defamer liable under the rule stated in this Section unless it is reflected in some kind of economic or pecuniary loss." *Id.,* § 575, comm. b. Unlike general damages, which include "impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering," *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974), special damages are "the loss of something having economic or pecuniary value." Restatement 2d Torts § 575, comment b; *see also Simon*, 895 F.2d at 1312 (discussing

---

in his [or her] office, profession or trade." L. Eldredge, The Law of Defamation, § 22 at 127 (1978). Thus, in determining whether a statement is slander per se under California law, the question is whether the statement, if understood in its defamatory sense, would fall within one of the categories enumerated in the California slander statute. *Simon v. Shearson Lehman Bros., Inc.*, 895 F.2d 1304, 1312 (11th Cir. 1990). A statement is slander per se if, in looking at the circumstances of the publication, including extrinsic evidence, the potentially defamatory statement accuses someone of a crime, accuses someone of unfitness for his or her profession, accuses someone of having an infectious disease or accuses a woman of being unchaste. *Id.* "If the slanderous statement does not fall within one of these categories, the statement is slander per quod and requires proof of special damages even if the statement is facially defamatory." *Id.* "With respect to slander per se, the trial court decides if the alleged statement falls within Civil Code section 46, subdivisions (1) through (4). It is then for the trier of fact to determine if the statement is defamatory." *Regalia v. Nethercutt Collection*, 172 Cal. App. 4th 361, 367 (2009).

California law). As they are specifically defined under California law, "'[s]pecial damages' are all damages which plaintiff alleges and proves that he has suffered in respect to his property, business, trade, profession or occupation, including such amounts of money as the plaintiff alleges and proves he has expended as a result of the alleged libel, and no other." Cal. Civ. Code § 48a4(b). In contrast, "[g]eneral damages" are damages for loss of reputation, shame, mortification and hurt feelings. *Id.* § 48a4(a).

Here, the parties' agreed-upon jury instruction on slander lays out the elements of such a claim:

> Plaintiff claims that Black, as Chevron's agent, harmed him by making two separate statements: one in the context of an internal Chevron investigation, and a second to a third party, Ed Zwirn.
>
> To establish this claim, plaintiff must prove all of the following:
>
> Liability
>
> 1. That Black made the statement to a person other than plaintiff;
> 2. That this person reasonably understood that the statement was about plaintiff;
> 3. That because of the facts and circumstances known to the listener of the statement, it tended to injure plaintiff in his occupation;
> 4. That Tim Black failed to use reasonable care to determine the truth or falsity of the statement;
> 5. That plaintiff suffered harm to his property, business, profession, or occupation; and
> 6. That the statement was a substantial factor in causing plaintiff's harm.
>
> Actual Damages
>
> If plaintiff has proved all of the above, then he is entitled to recover if he proves that Tim Black's wrongful conduct was a substantial factor in causing any of the following actual damages:
>
> a. Harm to plaintiff's property, business, trade, profession, or occupation;
> b. Expenses plaintiff had to pay as a result of the defamatory statements;
> c. Harm to plaintiff's reputation; or
> d. Shame, mortification, or hurt feelings.

Dkt. No. 56 at 29-30; Def.'s Reply at 1-2.

In their verdict, the jury found that Duste suffered no damages related to the first two categories – harm to his property, business, trade, profession, or occupation, and expenses paid as a result of the defamatory statements – but did find damages related to the third and fourth – harm to his reputation, as well as shame, mortification, or hurt feelings. Dkt. No. 80 at 4. Chevron argues

that, because the jury failed to award damages based on the first two categories, no award was made for special damages, and there is consequently no legal basis to award Duste anything at all. Chevron thus requests that the jury's award to Duste be overturned, with judgment entered accordingly for Chevron. Def.'s Mot. at 8.

In response, Duste argues that, while Chevron asserts that there was no evidence that he suffered economic damages as a result of the slanderous statement, he need only show that he was "actually harmed" by the statement. Pl.'s Opp'n at 4. Plaintiff directs the Court's attention to the jury instruction, which Chevron agreed to use, that lists all damages as "actual damages" and makes no distinction for "special damages."

Having reviewed the parties' arguments and relevant case law, the Court finds no proof of special damages exists and the jury's award to Duste should be overturned. In *Regalia*, the Court of Appeal overturned a jury verdict in favor of the plaintiff for slander in the amount of $750,000. 172 Cal. App. 4th at 367. The court found that the allegedly slanderous statements were not slander per se, but slander per quod, and thus required a showing of special damages. *Id.* at 369-70. But the jury's award was premised on damages for assumed harm to plaintiff's reputation, rather than any actual economic damages.[2] *Id.* at 366-67. The Court of Appeal directed the trial court to enter judgment in favor of defendants because the jury found that plaintiff did not suffer actual damages, and thus retrial was not necessary. *Id.* at 371.

The same is true here. The jury in this case specifically found that Duste had suffered no economic or pecuniary loss attributable to the alleged statement by Black to Zwirn, as evidenced by their award of $0 in response to specific questions about such loss. Dkt. No. 80 at 4. Having found no actual damages, the jury nevertheless went on to award damages for assumed harm to Plaintiff's reputation, and for "shame, mortification and hurt feelings." Dkt. No. 80 at 4. Absent proof of special damages, however, there is no legal basis for such an award.

Moreover, in opposing Chevron's pre-verdict JMOL motion, Plaintiff's counsel appeared to

---

[2] The actual finding was that Regalia did not suffer "actual noneconomic damages." At oral argument, Regalia did not dispute that by this finding the jury found no actual damages. *Id.* at 370.

Page 8 of 13

concede a lack of special damages evidence when he relied only on Duste's testimony regarding "general damages." Tr. 636:16-637:1, Pope Decl., Ex. A, Dkt. No. 97. Further, in his opposition to the present motion, Duste points to no evidence of special damages. Instead, Duste refers the Court to his testimony regarding "actual damages" and provides the following examples:

> Well, sure it upset me because, you know, I've got a reputation out there in the industry, just in general. And this kind of flies in the face of the reputation that I had built, and so it was upsetting.

(Testimony of Richard Duste, Attached to Pope Decl. as Ex. A, 266:23-267:1.)

> I was angry. I was sad. I was more in disbelief, I think.

(Id., 268:9.)

> On and off, I still lose sleep about it. I wake up in the middle of the night thinking about what had gone on and kind of recounting it in my mind over and over again, sort of arguing my point, so to speak.

(Id., 168:22-25.)

> It would affect my credibility in the industry, my ability to be as successful as I have in the past. From the personal side, it could affect the way people look at me, not only close friends and family, but people I'm not quite as close to, if they don't have the context to put what they hear in versus what they really know about me.

(Id., 269:15-20)

> You know, to this day, comments or questions still come up around this statement. And there is a certain amount of feeling that, you know, that people act sort of strangely. And this isn't something that gets blurted out and say, this is what I've heard about you, but you kind of wonder why they are acting that way.

(Id., 272:20-23.)

> I'm not nearly as easy-going as I used to be. You know, I'm much more – I would say short-tempered, don't have the patience I used to have.
> I – in the past I would let things roll off on me, now I'm more verbal on what I think about things. It's noticeable, family members have noticed that I'm not as easy mannered as I used to be. I'm kind of quick to be jumpy about things.

(Id., 279:3-10.)

Pl.'s Opp'n at 5. However, none of Duste's proffered testimony establishes that he suffered an economic or pecuniary loss attributable to the alleged statement by Black to Zwirn. Thus, for the same reasons as the Court found in *Regalia*, it appears that the jury's award to Duste should be overturned, and judgment entered for Chevron.

1   Unlike in *Regalia*, however, where the jury specifically found no actual damages, the jury
2   instruction in this case lists all four categories of possible damages as "actual damages."  Thus, the
3   question becomes whether the jury instruction makes it clear that the failure to award damages in the
4   first two categories negates any amount awarded in the latter two.  The Court finds that it does not.
5   And, because Chevron agreed to the instruction in this format, without any distinction regarding the
6   types of damages available, it would seem unjust to allow Chevron to make this distinction post-
7   verdict.  Accordingly, Chevron's motion is DENIED on this ground.

8       2.    <u>Whether Ed Zwirn understood the statement to be defamatory</u>

9   Chevron next argues that there is insufficient evidence to demonstrate a required element of
10  slander per quod – that Zwirn understood the statement to be defamatory or injurious to Duste.
11  Def.'s Mot. at 10.  Specifically, Chevron argues that Zwirn did not view the statement as
12  defamatory, or impugning Duste's reputation in any way; to the contrary, Chevron contends that
13  Zwirn testified that he thought more highly of Duste after having heard Black's statement, and went
14  so far as to state further that, if only he had known of Duste's entertainment interests, he would have
15  invited Duste along on Zwirn's own escapades.  *Id.* at 9.

16  In response, Duste argues that Zwirn testified that he would never take clients to brothels,
17  and doing so would be viewed negatively by the industry.  Pl.'s Opp'n at 6.  Duste further argues
18  that the fact that Zwirn himself went to strip clubs has no bearing on the issue of whether the
19  statement that "plaintiff takes clients to brothels" is defamatory.  *Id.* at 8.

20  An actionable slander claim requires proof that the third party who heard the statement
21  understood it to be defamatory.  *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645-46 (1999); *see also*
22  Dkt. No. 56 at p. 29 (jury instruction stating that slander requires "[t]hat because of the facts and
23  circumstances known to the listener of the statement, it tended to injure plaintiff in his occupation").
24  Indeed, if the third party hearing the statement does not understand the statement to be defamatory
25  and the statement does not affect his view of the plaintiff, then the plaintiff suffers no damages as a
26  result.  *Wetzel v. Gulf Oil Corp.*, 455 F.2d 857, 863 (9th Cir. 1972) (affirming a directed verdict for
27  the defendant on the plaintiff's claim for defamation where there was no testimony that the third
28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1  party listener believed the remarks and no evidence that the third party thought less of the plaintiff
2  because of them); *see also Martin v. Sutter*, 60 Cal. App. 8, 13 (1922) (holding that a slander claim
3  requires proof that "the words spoken must be understood by those who heard them uttered in a
4  slanderous sense").[3]

5  Here, in viewing Zwirn's testimony, there is insufficient evidence to demonstrate that he
6  himself understood the statement to be defamatory or injurious to Plaintiff. At trial, Zwirn testified
7  that Tim Black told him that Duste was fired for being in a brothel. Tr. 13:9-20, Walston Decl., Ex.
8  A, Dkt. No. 100. In response to hearing the statement, Zwirn testified that he "wish[ed he] would
9  have known," because he "probably after dinner would have taken [Duste] to a strip bar and smoked
10 a cigar and had a cocktail." *Id.* at 17, 34. Zwirn went on to testify that after he heard the comment,
11 "the only way [he] felt any differently about [Duste] was that [he was] wishing [he] had known,
12 because then [he] would have gone to strip clubs with him." *Id.* at 57:20-58:1. Zwirn also testified
13 that knowing about this comment "didn't make any difference in terms of any contractual
14 relationship between Chevron and [Zwirn's company]," and that he would "consider buying aviation
15 fuel from Mr. Duste today." *Id.* at 43-44, 59. Thus, the trial record is clear that Zwirn's attitude
16 towards Duste did not change for the worse as a result of hearing Black's statement at the trade
17 show. In fact, the evidence shows the opposite: Zwirn – the only person that the evidence
18 demonstrates ever heard Black's comment at the trade show – wished he had known sooner because
19 he would have gone to strip clubs with him.

20 In his Opposition, Duste points to no evidence showing that Zwirn understood the statement
21 to be defamatory or that the statement affected his view of Duste in a negative way. Instead, Duste
22 attempts to expand upon Zwirn's actual testimony and add his own argument that taking clients to
23 brothels "would be viewed negatively by the industry," that "taking a client to a brothel [is] illegal,"
24 and that "it is harmful to someone's reputation in the jet fuel industry." Pl.'s Opp'n at 6-7.

---

[3] Duste argues that the Court should apply an objective standard rather than the subjective standard applied by the Ninth Circuit. Pl.'s Opp'n at 7 n.2. However, he provides no authority in support of this argument.

However, no such evidence was presented at trial. Duste quotes testimony from Zwirn to the effect that he (Zwirn) would not take clients to a "brothel," but would take them to "strip clubs." Tr. at 61:13-62:3, Dkt. No. 100. Zwirn also testified that only 25 percent of people in his industry would go to strip clubs, and that a female boss at his former company did not approve of taking clients to strip clubs. *Id.* at 35:3-36:10. However, this testimony does not counteract his own testimony in which he stated that he wished he had known sooner and that he would have gone to strip clubs with Duste.

Thus, in viewing all evidence in the light most favorable to Duste and drawing all reasonable inferences in his favor, the Court finds that judgment as a matter of law pursuant to Rule 50(b) is appropriate because the evidence permits only one reasonable conclusion – that Zwirn did not understand the statement to be defamatory and the statement did not affect his view of Duste. As that conclusion is contrary to that of the jury, Chevron's Motion is GRANTED on this ground.

3. <u>Whether the evidence supports a finding that Tim Black was acting as Chevron's agent when he made the statement to Ed Zwirn</u>

Chevron next argues that the evidence does not support a finding that Black was acting as Chevron's agent when he made the statement, and therefore Chevron cannot be held liable under the doctrine of respondeat superior.[4] Under this doctrine, an employer is vicariously liable for the torts of its employees committed within the scope of the employment. *Lisa M. v. Henry Mayo Newhall Mem. Hosp.*, 12 Cal.4th 291, 296 (1995) (citing *Perez v. Van Groningen & Sons, Inc.*, 41 Cal.3d 962, 967 (1986)). However, as discussed above, Duste failed to establish all elements of his slander cause of action. Thus, as Duste failed to establish a tort, there can be no vicarious liability. Accordingly, Chevron's motion is GRANTED on this ground as well.

### III. CONCLUSION

Based on this analysis, the Court hereby **GRANTS** Chevron's motion for judgment as a matter of law as follows:

---

[4] Tim Black, who made the allegedly defamatory statement, was not a Defendant in this case.

1. The evidentiary record at trial does not establish the following requisite element for Plaintiff's Slander Claim with respect to Black's statement to Zwirn: The third party to whom the statement was made (Zwirn) did not understand the statement to be defamatory. Absent such evidence, there can also be no cause of action by which he can establish respondeat superior liability against Chevron for Black's statement to Zwirn. Thus, Duste has not carried his burden of proof, and the jury's verdict is insupportable. Further, because the jury found that Duste did not suffer economic or pecuniary damages, and no evidence of any such damages was presented at trial, retrial is not necessary pursuant to Rule 50(c). *Regalia*, 172 Cal. App. 4th at 371.

A separate judgment in favor of Chevron shall issue.

**IT IS SO ORDERED.**

Dated: January 9, 2012

_____
Maria-Elena James
Chief United States Magistrate Judge

Case3:08-cv-03980-MEJ Document102 Filed01/09/12 Page14 of 14